O'NEILL DEVELOPMENTS, INC.

v.

GALEN KILBURN, INC., d/b/a Galen Kilburn & Company.

Civ. A. No. C 81–1268.

United States District Court, N. D. Georgia, Atlanta Division.

Oct. 22, 1981.

Sumner C. Rosenberg, Herbert D. Shellhouse, Steven W. Korn, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiff.

G. William Long, III, Ware, Parker, Johnson, Cook & Denlevie, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

Plaintiff O'Neill Developments, Inc. ("O'Neill") has applied to the Court for a temporary restraining order, prohibiting Defendant Galen Kilburn, Inc. d/b/a Galen Kilburn & Company ("Kilburn") from infringing on a certain copyright belonging to O'Neill. The Court heard oral argument on October 14, 1981, and has considered various affidavits and documentary evidence submitted by the parties.

O'Neill and Kilburn are competitors in the business of developing office condominium projects. This action concerns certain advertising brochures used by the parties in promoting their respective projects. O'Neill claims that Kilburn's advertising brochures are substantially copied from O'Neill's copyrighted promotional material.

The facts of this case are straightforward, and essentially undisputed. Both O'Neill and Kilburn are presently engaged in the development of projects in which several small office buildings are erected in a cluster and then sold to businesses for use as offices. O'Neill has two such "office condominium" projects, Northridge 400 and Powers Ridge, developed in partnership with the Griffin Company. Construction began on Northridge 400 in 1980 and on Powers Ridge in 1981. Kilburn is the developer of Paces/285, a project that was begun in 1981. Northridge 400, Powers Ridge and Paces/285 are all located near Interstate 285 just to the northwest of Atlanta.

To advertise its office condominiums, and to familiarize the realty industry and the public with the advantages of office ownership, O'Neill commissioned one brochure for

each of his two projects. Timothy J. O'Neill, president of O'Neill, wrote most of the text of the brochures and commissioned commercial artists to illustrate them. The Northridge 400 and Powers Ridge brochures, which are quite similar in style and content, were distributed to Atlanta area realtors, brokers and prospective customers beginning on February 25, 1980. When the brochures were distributed, they did not contain any notice of copyright.

On October 14, 1980, Galen Kilburn, president of Kilburn, called Joel Griffin, president of the Griffin Company, and expressed his interest in purchasing an office condominium in the O'Neill/Griffin Northridge 400 project. Griffin mailed him a copy of the Northridge 400 brochure. Sometime in early 1981, Kilburn prepared its own brochure to advertise its Paces/285 office condominium project. Kilburn did not obtain O'Neill's permission to copy its brochures in preparing the Paces/285 promotional material.

O'Neill became aware of the nature of the Paces/285 brochure in late May, 1981, when it began to receive inquiries from real estate brokers concerning the Paces/285 project. O'Neill's response was two-fold. First, in letters dated June 5 and June 12, 1981, O'Neill's attorney requested of Kilburn's attorney that Kilburn discontinue distribution of the Paces/285 brochure; when Kilburn refused, O'Neill filed this action on July 1, 1981. Second, on June 18, 1981, O'Neill obtained Certificates of Registration from the Register of Copyrights for the Northridge 400 and the Powers Ridge brochures; the copyrights on the brochures had not been registered previously because O'Neill "had [no] reason to believe that any other person would attempt to copy these brochures." Affidavit of Timothy J. O'Neill dated October 13, 1981 at ¶ 8. O'Neill also began to include notices of copyright in the brochures it distributed.

O'Neill now contends that the Paces/285 brochure infringes its copyrights on the Northridge 400 and Powers Ridge brochures and petitions the Court for temporary injunctive relief. To obtain such relief

in a copyright infringement action, O'Neill must pass a four-part test:

> [I]t must be demonstrated that the movant has a substantial likelihood of success on the merits, that irreparable injury will be suffered unless the injunction issues, that the threatened injury to the movant outweighs the damage which the injunction may cause the opponent, and that the injunction would not be adverse to the public interest.

*Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979); *Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Cooperative Productions, Inc.*, 479 F.Supp. 351, 355 (N.D.Ga.1979). The real issue in this case concerns the first factor, O'Neill's probability of success on the merits.

■ In order to establish that it is likely to succeed on the merits, O'Neill must show ownership of a valid copyright and copying of the copyrighted material by Kilburn. *Showcase Atlanta*, 479 F.Supp. at 355. The Court will consider these elements in reverse order.

■ Examination of the three brochures reveals that the Paces/285 brochure is very similar in general format to the O'Neill brochures. All the brochures contain artist's sketches of the developments, drawings of the front view and floor plans of the buildings, and tables of projected operating costs in nearly identical formats. Kilburn argues that promotional literature for any office condominium project would be likely to include these components; however, the Court is struck by the striking similarity in the manner in which these elements are presented. Furthermore, both the Powers Ridge and the Paces/285 brochures contain a one-page insert that quotes various publications concerning the benefits of office condominium ownership; five of the seven quotations or paragraphs in the Paces/285 insert also appear on the Powers Ridge insert, and both inserts are headed by the phrase "The Unique Alternative." Finally, a large percentage of the text of the Paces/285 brochure has been copied verbatim from the O'Neill brochures, and a con-

siderable portion of the remaining text merely paraphrases the O'Neill language. The Court finds that the Paces/285 brochure is "substantially similar" to the O'Neill brochures under the "ordinary observation or impression" test. *Showcase Atlanta*, 479 F.Supp. at 356. Therefore O'Neill has demonstrated that Kilburn has copied O'Neill's brochures.

Nonetheless, O'Neill has not satisfactorily demonstrated its likelihood of success on the merits unless it has also presented evidence that it has a valid and enforceable copyright. O'Neill has submitted copies of Certificates of Registration of its copyrights to the Court. The Certificates are dated June 18, 1981, which is within five years of the first publication of its brochures on February 25, 1980; therefore, the Certificates are prima facie evidence of the validity of the copyrights. 17 U.S.C. § 410(c). Under the present Copyright Act, a copyright arises when the work is created, and registration of the copyright is not a prerequisite to its existence. 17 U.S.C. § 408(a); 2 *Nimmer on Copyright* ¶ 7.16[A]–[1]. Therefore O'Neill could have had an enforceable copyright in the Northridge 400 and the Powers Ridge brochures at the time t'·at Kilburn published its Paces/285 brochure, even though the O'Neill copyrights were not registered at that time. Kilburn argues, however, that O'Neill's failure to include the copyright notice injected O'Neill's brochures into the public domain.

Under the 1909 Copyright Act, which was repealed effective January 1, 1978, publication of a work without including a notice of copyright constituted dedication of the work to the public domain. *National Comics Publications v. Fawcett Publications*, 191 F.2d 594 (2d Cir. 1951); H.R.Rep.No.1476, 94th Cong., 2d Sess. 146, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5659, 5762. The present Copyright Act still requires the inclusion of a notice of copyright. 17 U.S.C. § 401(a). However, the penalties for failure to include the notice are now "less Draconian." 2 *Nimmer on Copyright* ¶ 7.01 (1981).

The law still provides that a failure to include the required notice will invalidate the copyright, but permits the omission to be cured in three different ways. 17 U.S.C. § 405(a). O'Neill contends that it has cured the omission by "registration [of] the work ... within five years after the publication without notice, and a reasonable effort ... to add notice to all copies ... that are distributed ... after the omission has been discovered." 17 U.S.C. § 405(a)(2).

It is undisputed that O'Neill registered its copyrights within five years of the date of publication without notice. Furthermore, O'Neill has included a notice of copyright in all brochures distributed after the existence of the copyright became an issue, that is, after O'Neill discovered the existence of Kilburn's Paces/285 brochure. Kilburn argues, however, that O'Neill has not complied with 17 U.S.C. § 405(a)(2) because it has failed to make "a reasonable effort ... to add notice" to those copies distributed *before* June 1981.

Kilburn's argument turns on the meaning of the word "discovered" in section 405(a)(2). Kilburn contends that O'Neill's omission of the copyright notice for the first 15 months of publication was intentional, pointing to statements by O'Neill's president that copyrights were not registered at the time of first publication because he did not anticipate that anyone would ever copy the brochures. Kilburn then cites Professor Nimmer for the proposition that section 405(a)(2) is intended to apply primarily to inadvertent omissions of the copyright notice. According to Nimmer, a deliberate decision not to include a copyright notice cannot be cured under section 405(a)(2) until the copyright owner has made reasonable efforts to affix the notice to every copy in circulation. The "discovery" of a deliberate omission, Nimmer states, occurs at the moment of first publication; the reasonable efforts requirement applies to all published copies after the first. 2 *Nimmer on Copyright* ¶ 7.13[B][3] (1981).

There is another possible interpretation of the word "discovered," however. Congress could have intended that copyright owners could cure deliberate omissions by

including a notice of copyright in those copies published after "discovery" of the fact that the existence of a copyright has become an issue. Under this interpretation, the reasonable efforts requirement would apply only to those copies published after "discovery" of facts indicating the existence of such a controversy.

On the basis of the language of the statute alone, the Court agrees with Kilburn that the Nimmer interpretation is the more persuasive of the two possible readings. However, the Nimmer interpretation is directly at odds with the legislative history of section 405(a). The relevant portions of the House Report provide as follows:

> The provisions of section 405(a) make clear that the notice requirements of section 401, 402 and 403 are not absolute and that, unlike the law in effect, the outright omission of a copyright notice does not automatically forfeit protection and throw the work into the public domain. This ... represents a major change in the theoretical framework of American copyright law.

H.R.Rep.No.1476, 94th Cong., 2d Sess. 146, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5659, 5762. The House Report goes on to say:

> Under the proposed law a work published without any copyright notice will still be subject to statutory protection for at least 5 years, whether the omission was partial or total, unintentional or deliberate.

*Id.* at 147. Section 405(a)(2) is the only subsection of section 405(a) that contains any mention of a five-year period, so the "unintentional or deliberate" language must refer specifically to section 405(a)(2).

Kilburn asks the Court to ignore this clear expression of Congressional intent because it appears to be at odds with the more persuasive reading of the statutory language. This is the course adopted by Nimmer, who states, "No matter how clear the express legislative intent, it cannot be given effect where it contradicts the unambiguous statutory text." 2 *Nimmer on Copyright* ¶ 7.13[8][3] (1981). The Court rejects the Nimmer view for two reasons.

■ First, courts do indeed have power in certain circumstances to revise statutes to conform them to clearly expressed legislative intent. *See, e. g., Church of the Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). The Fifth Circuit has recently discussed this power at length, *Abdalla v. Commissioner,* 647 F.2d 487, 496–503 (5th Cir. 1981), and in so doing cited several recent examples of such judicial revision by the Supreme Court and the Fifth, Seventh and District of Columbia Circuits. *Id.* at 496 n.13. Furthermore, even where the language of the statute appears to be unambiguous, the Court is required to consider contrary expressions in the legislative history. *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). The statute at issue in *Train,* the Federal Water Pollution Control Act ("FWPCA"), by its own terms unambiguously required the Environmental Protection Agency to regulate the discharge of all radioactive materials into bodies of water. The *Train* litigation arose when EPA refused to regulate the discharge of radioactive materials by nuclear power plants, citing legislative history of the FWPCA that indicated a congressional intent that such discharges continue to be regulated exclusively by the Atomic Energy Commission. In requiring EPA to regulate nuclear power plant radioactive water pollutants, the Tenth Circuit relied on the plain language of the FWPCA and specifically refused to consider its legislative history. The Supreme Court reversed, stating,

> To the extent that the Court of Appeals excluded reference to the legislative history of the FWPCA in discerning its meaning, the court was in error. As we have noted before: "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'"

*Id.* at 9–10, 96 S.Ct. at 1942, quoting *United States v. American Trucking Associations,*

*Inc.*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

 More importantly, the Court disagrees with Nimmer's opinion that the text of section 405(a)(2) is "unambiguous." The section is not a model of clarity, and especially in light of its legislative history the Court believes that it is susceptible of the two interpretations set forth earlier in this Order. When a court is faced with two possible interpretations of a statute, it is customary to refer to the legislative history. *United States v. Noe*, 634 F.2d 860 (5th Cir. 1981). The legislative history of section 405(a)(2), of course, indicates that Congress intended it to apply to "unintentional or deliberate" omissions of the copyright notice. It is undisputed that O'Neill has included copyright notices in those copies of the brochure distributed after June 1981. The Court therefore finds that O'Neill has cured its deliberate omission of the notice by complying with 17 U.S.C. § 405(a)(2), and that as a result O'Neill holds a valid copyright in the Northridge 400 and Powers Ridge brochures. O'Neill has thus presented sufficient proof of its probability of success on the merits to warrant temporary injunctive relief.

Because O'Neill has made out a case of copyright infringement, a presumption of irreparable injury arises. *Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Cooperative Productions, Inc.*, 479 F.Supp. 351, 362 (N.D.Ga.1979) and cases cited therein. Furthermore, O'Neill has presented evidence that the parties are direct competitors, that several of O'Neill's office condominiums have not yet been sold and that transactions involving others have not yet been closed, and that the Paces/285 brochure has caused actual confusion in the real estate marketplace concerning the relationship between that project and those of O'Neill. Finally, Kilburn's ongoing infringement may well have run its course by the time of trial. The Court finds sufficient irreparable injury to justify temporary injunctive relief. Furthermore, the Court finds that the magnitude of this damage is greater than the damage that a tem-porary restraining order or injunction will impose upon Kilburn. Finally, the Court finds that the granting of temporary injunctive relief would not be adverse to the public interest.

On the basis of the foregoing analysis, the Court GRANTS O'Neill's request for a temporary restraining order. Defendant Galen Kilburn, Inc., d/b/a Galen Kilburn & Company, its agents, servants and employees, and all others with actual notice, are hereby RESTRAINED from infringing the copyrights of Plaintiff O'Neill Developments, Inc., in its Northridge 400 and Powers Ridge brochures, and from publishing, or distributing, in any manner, any further copies of the Paces/285 brochure, pending further order of this Court.