UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1446

CHARLES GARNIER, PARIS,

Plaintiff - Appellant,

v.

ANDIN INTERNATIONAL, INC., ET AL.,

Defendants - Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Torruella, Selya and Cyr,

Circuit Judges.

John D. Deacon, Jr., with whom Flanders & Medeiros, Inc.,

was on brief for appellant.
Julius Rabinowitz, with whom Josephine Bachmann, Kuhn &

Muller, Esqs., William Richard Grimm, Christopher M. Neronha and

Hinckley, Allen & Snyder, were on brief for appellees.

October 7, 1994

TORRUELLA, Circuit Judge. This case requires us to

determine the proper application of the so-called "cure"

provision of the copyright laws, 17 U.S.C. 405(a), which allows

authors seeking copyright protection to remedy a prior failure to

affix notice of copyright to copies of their creative work in

order to avoid forfeiting protection of the copyright laws.

Because the requirement of copyright notice was recently removed

from the statute, some confusion has arisen over the application

of the cure provision in cases where copies without notice were

distributed before or after the change in the law. We are

presented here with such a case. The district court found that

the cure requirements applied in this case and granted summary

judgment on the ground that a proper cure was not effected.

Although we disagree that some of the facts relied upon by the

district court are undisputed, we find that the court's legal

conclusions are correct and affirm the judgment based on an

alternative version of facts that are not in dispute.

I. BACKGROUND

Plaintiff-appellant, Charles Garnier, Paris ("Garnier")

is a French company engaged in the business of designing,

manufacturing and selling fine jewelry around the world. In

1987, a Garnier employee designed a piece of jewelry known as the

Swirled Hoop Earring. Garnier first showed and offered the

Swirled Hoop Earring for sale publicly in April of 1988. Garnier

has distributed the Earring ever since to customers

internationally and in the United States.

-2-

Defendants-appellants Andin International, Inc. and

Jotaly, Ltd., a corporate affiliate of Andin, (collectively

referred to as "Andin") manufacture and sell jewelry in the

United States. In 1990, Andin began manufacturing and selling

identical copies of the Swirled Hoop Earring without Garnier's

knowledge or authorization. In July of 1992, Garnier discovered

that Andin was producing and distributing infringing copies of

its Swirled Hoop Earring. Garnier immediately registered its

copyright in the earring at that time,1 asserting that this was

the first time it had ever considered seeking copyright

protection for that piece.

Prior to the registration of the Swirled Hoop Earring

design in July of 1992, none of Garnier's Swirled Hoop Earrings

carried a notice of copyright.2 After registering the Swirled

Hoop Earring, Garnier's factory immediately began placing notice

of copyright on every copy of the Swirled Hoop Earring produced

thereafter. Garnier claims that, once it discovered Andin had

copied the Swirled Hoop Earring, it discarded all remaining

Swirled Hoop Earrings in its own inventories that did not have

proper notice, and refrained from delivering any of the earrings

without notice to its retail customers. Thus, all of Garnier's

1 The Swirled Hoop Earring is copyrightable as an original
sculptural work. 17 U.S.C. 102(a)(5).

2 Copyright notice for jewelry consists of the copyright symbol
or the word "Copyright," followed by the name of the owner of the
copyright, "affixed" to each copy in such a manner as "to give
reasonable notice of the claim of copyright." 17 U.S.C. 401(b)
& (c).

-3-

distributions of the Swirled Hoop Earring after July of 1992

contained notice of copyright.

The parties dispute whether copies of the Swirled Hoop

Earring existed in retail stores selling Garnier's jewelry as of

July of 1992. Garnier's customers consist of independent retail

jewelers, retail jewelry chains, multiple store locations and

department stores. Although there are 150 such customers, only

50 are continuing or repeat costumers. Garnier claims that its

customers had little, if any, inventory of the Swirled Hoop

Earring at the time Garnier "discovered" the need to provide

copyright notice in July of 1992. According to Garnier, mid-

summer is the low point in the business cycle for retail jewelry

because inventories are used up and new orders go out for fall

delivery. In September of 1992, however, Andin purchased a

Swirled Hoop Earring at Bloomingdale's, one of Garnier's

customers, which did not bear any copyright notice. Garnier also

sent a letter to its fifty largest customers stating that it had

registered a copyright in the Swirled Hoop Earring. One Garnier

official admitted that the letter was sent in case any of the

retailers still had the earring in their inventories.

Ultimately, Garnier simply did not know how many Swirled Hoop

Earrings its retailers still had in their inventories as of July

of 1992.

The letter that Garnier sent to its fifty largest

customers was the only remedial effort taken by Garnier with

respect to the Swirled Hoop Earrings still remaining in retail

-4-

store inventories in direct response to the July, 1992 discovery

of Andin's infringement. In the letter, Garnier stated that it

held a copyright in the Swirled Hoop Earring, but did not

indicate that copyright notice had been omitted from the earrings

in the retailers' inventories or that there was a need to rectify

the omission by adding notice of copyright. Garnier claims it

did not send the letter to the other 100 retail customers because

those customers were only one-time purchasers of the Swirled Hoop

Earring, and they were therefore unlikely to have any Swirled

Hoop Earring inventory left by July of 1992. Garnier never

offered to send a tag or label bearing a copyright notice to the

retailers for placement on any unnoticed items in their

inventory.

Garnier did have another arrangement, already in place

by the time Garnier discovered Andin's infringement in July of

1992, that was designed to provide a general notice of copyright.

Beginning in 1990, Garnier provided all its retail costumers with

a "story card" and instructed them to include the card with the

sale of all Garnier products to purchasing consumers. The story

card stated, among other things, that the purchased piece is a

"Charles Garnier of Paris original . . . genuine 18 karat gold

copyrighted design," and that "every Charles Garnier design is a

genuine copyrighted original." The card says nothing in

particular about the Swirled Hoop Earring, the lack of copyright

notice, or the need to affix notice to unnoticed pieces.

Although the story card was not attached or affixed to the

-5-

jewelry pieces themselves, Garnier claimed that its retailers

gave the story card to every customer who bought Garnier jewelry.

Garnier occasionally checked to confirm this but generally relied

on the retailers' word that they were providing the story card to

purchasers of Garnier jewelry.

Garnier brought this action in October of 1992,

asserting two claims of copyright infringement against Andin.

Count I of the complaint alleged that Andin had infringed

Garnier's copyright in the Swirled Hoop Earring and Count II

alleged that Andin had infringed Garnier's copyright in another

piece of jewelry. The claim in Count II was eventually settled

and is not presently before us. In May of 1993, Garnier filed a

motion for a preliminary injunction against Andin's continuing

manufacture and distribution of copies of Garnier's Swirled Hoop

Earring. Andin then filed a motion for partial summary judgment

as to Count I of the complaint. Following a hearing, the

district court denied Garnier's motion for a preliminary

injunction and granted Andin's motion for summary judgment as to

Count I. The court concluded that Garnier's copyright in the

Swirled Hoop Earring had been forfeited because Garnier had

omitted notice of copyright from the Swirled Hoop Earring when it

was first published and subsequently failed to take reasonable

efforts to cure that omission. Entry of final judgment as to

Count I was made by the court under Rule 54(b) on March 2, 1994.

Garnier appealed and, after ordering the district court to

provide a more expansive statement of the reasons for its Rule

-6-

54(b) certification, we heard the present appeal.

II. ANALYSIS

A. What Efforts To Cure, If Any, Are Required?

This case centers around the "cure" provision of the

copyright statute, 17 U.S.C. 405(a). This provision enables

would-be copyright holders who have failed to provide proper

notice on a creative work for which they seek protection under

the copyright laws to avoid forfeiture of protection for that

work by taking various remedial measures.3 See 2 Nimmer on

3 17 U.S.C. 405(a) provides:

(a) Effect of Omission on Copyright. --
With respect to copies and phonorecords
publicly distributed by authority of the
copyright owner before the effective date
of the Berne Convention Implementation
Act of 1988, the omission of the
copyright notice described in sections
401 through 403 from copies or
phonorecord publicly distributed by
authority of the copyright owner does not
invalidate the copyright in a work if --

(1) the notice has been omitted from no
more than a relatively small number of
copies or phonorecords distributed to the
public; or

(2) registration for the work has been
made before or is made within five years
after the publication without notice, and
a reasonable effort is made to add notice
to all copies or phonorecords that are
distributed to the public in the United
States after the omission has been
discovered; or

(3) the notice has been omitted in
violation of an express requirement in
writing that, as a condition of the
copyright owner's authorization of the
public distribution of copies or

-7-

Copyright 7.13[B] (1985) [hereinafter Nimmer]; Note, Omission

of Copyright Notice Under Section 405(a): What Kind of Oxymoron

Makes a Deliberate Error?, 60 N.Y. U. L. Rev. 956 (1985)

[hereinafter Note, Omission of Notice]. Under 405(a)(2),

failure to affix proper notice to certain copies of a work will

not result in forfeiture of copyright protection if, within five

years after the first publication of a copy without notice, the

work is registered at the Copyright Office and a "reasonable

effort" is made by the author to add notice to all copies

distributed to the public "after the omission has been

discovered." 17 U.S.C. 405(a)(2); Princess Fabrics, Inc. v.

CHF, Inc., 922 F.2d 99, 103 (2d Cir. 1990); Donald Frederick

Evans v. Continental Homes, Inc., 785 F.2d 897, 905-12 (11th Cir.

1986); Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189,

193-94 (2d Cir. 1985); Shapiro & Son Bedspread Corp. v. Royal

Mills Assoc., 764 F.2d 69, 72-75 (2d Cir. 1985).

Prior to March of 1989, notice of copyright was

mandatory, thus proper cure for omission of copyright notice was

required for all copies distributed to the public after the

omission of notice was discovered. Nimmer 702[C], at 7-15

through 7-16. In 1988, the copyright statute was amended by the

Berne Convention Implementation Act of 1988 ("BCIA"), Pub. L. No.

100-568, 102 Stat. 2853 (amending 17 U.S.C. 101 et seq.), in

phonorecords, they bear the prescribed
notice.

Garnier has not claimed that 405(a)(1) or 405(a)(3) apply in
this case, so we confine our discussion to 405(a)(2).

-8-

order to bring the United States in line with the Berne

Convention on Copyright, an international convention aimed at

harmonizing copyright law around the world. Nimmer 702[B], at

7-14. Consequently, effective March 1, 1989, the attachment of

notice of copyright is no longer required to gain copyright

protection for creative works, although it is still encouraged

through various incentives. Id. at 7-14, 7-16; see, e.g., Direct

Marketing of Va., Inc. v. E. Mishan & Sons, Inc., 753 F. Supp.

100, 104 n.8 (S.D.N.Y. 1990). The aforementioned cure

requirements provided in 405(a), however, are retained in the

amended statute and apply to "copies and phonorecords publicly

distributed by authority of the copyright owner before the

effective date of the [BCIA]." 17 U.S.C. 405(a); Encore Shoe

Corp. v. Bennett Indus., Inc., 18 U.S.P.Q. 2d 1874 n.9 (D. Mass.

1991); Nimmer 7.13[B]. One issue bedeviling this case is

whether the BCIA amendments have eliminated Garnier's need to

cure some or all of the copies of the Swirled Hoop Earring, given

that Garnier first distributed copies prior to the effective date

of the BCIA amendments, but also distributed copies after the

amendments went into effect.

Before we address that issue, however, we must first

review the district court's determination of the point at which

Garnier "discovered" its omission of copyright notice for

purposes of the cure provision. 17 U.S.C. 405(a)(2) (requiring

a "reasonable effort" to add notice to all copies distributed to

the public after the omission of notice "has been discovered").

-9-

The discovery date is important for determining the date at which

cure efforts should commence and for determining whether the

"delay," if any, between discovery and cure is such that

subsequent cure efforts can no longer be considered reasonable.

See, e.g., Princess Fabrics, 922 F.2d at 103; Valve & Primer

Copr. v. Val-Matic Valve & Mfg. Corp., 730 F. Supp. 141, 143-44

(N.D. Ill. 1990).

1. When was the Omission of Copyright Notice

Discovered?

Garnier claims that it discovered the omission of

copyright notice on copies of its Swirled Hoop Earring in July of

1992 -- when Garnier found out that Andin had produced and sold

copies of the Swirled Hoop Earring design. The district court

found, however, that Garnier "should have known" of the omission

of notice when Garnier initially distributed the Swirled Hoop

Earring in April of 1988. The district court concluded,

therefore, that Garnier "discovered" the omission of notice on

that date. On appeal, Garnier asserts that the court erred both

legally and factually. We agree only with the latter assertion.

Courts and commentators have developed several

different approaches toward the problem of determining what

constitutes the "discovery" of omission of copyright notice, and

at what point discovery occurs for purposes of the cure provision

in 405(a). At one extreme is the rule announced in O'Neill

Devs, Inc. v. Galen Kilburn, Inc., 524 F. Supp. 710, 714 (N.D.

Ga. 1981), which states that "discovery" relates to "the fact

-10-

that the existence of a copyright has become an issue." In other

words, discovery occurs when a copyright holder finds out that

someone else is copying his or her creative work. The court in

O'Neill did not state any authority or reason for its rule;

rather, it focused on discrediting an alternative rule endorsed

in Nimmer on Copyright, Nimmer 7.13[B][3], at 7-124.2 through

7-130. According to Nimmer, any deliberate or intentional

omission (that is, omissions that are not "inadvertent,"4) are

automatically discovered upon the date when a copy of the work is

first published or publicly distributed. Id. at 7-125 through 7-

126; see also Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc.,

552 F. Supp. 1305, 1310-12 (S.D.N.Y. 1982), criticized by Hasbro

Bradley, 780 F.2d at 195-96. Nimmer reasons that if an omission

is deliberate, "it must be immediately known (or 'discovered')."

Nimmer 7.13[B][3], at 7-125. "Simply put, one cannot 'discover'

4 Inadvertent omissions include those occurring when the author
intended to affix notice to published copies but his or her
attempts to do so were frustrated because of some mechanical or
publishing mistake that left notice off some or all of the
copies. Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc., 552 F.

Supp. 1305, 1313 (S.D.N.Y. 1982); Note, Omission of Notice, 60

N.Y. U. L. Rev. at 957-59. Omissions occurring because the
author never thought about, or knew of, the availability of
copyright protection or the requirement to affix notice
("thoughtless omitters") or because the author mistakenly thought
protection was unavailable ("mistake of law omitters") have
usually been considered to be deliberate, as opposed to

inadvertent. The omissions are labelled "deliberate" because the
authors in these situations were aware of the absence of notice
at the time their work was first published and they never
intended to affix notice in the first place. See Note, Omission

of Notice, 60 N.Y. U. L. Rev. at 959-60, 968-71; see, e.g.,

Sparkle Toys, 780 F.2d at 191, 195-96; O'Neill, 524 F. Supp. at

712, 715; Innovative Concepts in Entertainment, Inc. v.

Entertainment Enters. Ltd., 576 F. Supp. 457, 460 (E.D.N.Y.

1983).

-11-

an omission that has been deliberate." Beacon Looms, 552 F.

Supp. at 1310.

The O'Neill court argued that the Nimmer formulation

clearly conflicted with the legislative intent behind 405(a).

O'Neill, 524 F. Supp. at 714. Nimmer's rule essentially removes

any chance for those who deliberately and intentionally omit

copyright notice to successfully cure under the "reasonable

effort" requirement of 405(a)(2).5 See Nimmer 7.13[B][3],

at 7-125. Yet, when Congress amended the Copyright Law in 1976,

it expressed a clear intention to eliminate the previous

distinction, made since 1909, between purposeful or deliberate

omissions, which were subject to automatic forfeiture of

copyright protection, and unintentional omissions, which were

curable, so that all omissions could be cured by reasonable

efforts. See Sparkle Toys, 780 F.2d at 195-96; O'Neill, 524 F.

Supp. at 714; Note, Omission of Notice, 60 N.Y. U. L. Rev. at

963-75. According to the O'Neill court, the word "discover" must

be read in light of the Congressional intent to make all

omissions curable. O'Neill, 524 F. Supp. at 714.

In response, Nimmer argues that Congressional intent

must give way to the plain meaning of the statutory text of

5 This is because Nimmer's rule immediately triggers the
requirement to add notice, see 405(a)(2) (requiring cure

efforts once the omission is "discovered"), which the copyright
author will presumably fail to do within a "reasonable" time.
Authors will presumably fail to cure within a reasonable time
because they have just distributed copies without notice to begin
with and it is unlikely they would suddenly attach notice when
they could have done so in the first place.

-12-

405(a)(2), which, in Nimmer's view, compels the conclusion that

discovery is immediate for deliberate omissions. Nimmer

7.13[B][3], at 7-125.

We think that the proper interpretation of 405(a)(2)

must lie somewhere between the rule described in Nimmer and the

rule announced in O'Neill. On the one hand, Congress intended a

copyright holder to be able to cure all omissions, if the holder

made "reasonable efforts" to add notice. See H.R. Rep. No. 1476,

94th Cong., 2d Sess. 147, reprinted in 1976 U.S.C.C.A.N. 5659,

5673; see also Sparkle Toys, 780 F.2d at 195-96. Furthermore,

the language in 405(a)(2) concerning the addition of notice to

all copies "after the omission has been discovered," 17 U.S.C.

405(a)(2), does not expressly preclude a finding that a given

deliberate omission was discovered after the initial publication

of a work. Sparkle Toys, 780 F.2d at 196. Thus, the plain

language of the statute does not conflict with its legislative

intent.

Although Nimmer makes a compelling argument that one

already knows, and thus cannot "discover," an omission that was

made deliberately, this argument is only compelling if we limit

the definition of "deliberate omission" to mean a purposeful

decision to forgo copyright protection that would otherwise be

available if notice were affixed to a creative work. But see

Sparkle Toys, 780 F.2d at 196 (noting that an assignee or

licensee of the author or a company employee at a higher level of

the corporate hierarchy than the deliberate omitter could

-13-

subsequently discover a deliberate omission, in which case the

nature of the deliberate omission would be altogether irrelevant

to the plausibility of a subsequent discovery, and Nimmer's

argument would not be compelling under any definition of

"deliberate omission"). Most courts, and Nimmer himself,

however, have not so confined their definition of a deliberate

omission. See cases cited supra note [4]; Nimmer 7.13[B][3],

at 7-125 n.78. For example, "mistake of law" omitters and

"thoughtless" omitters are usually considered deliberate omitters

because they are aware of the absence of any notice at the time

their work was first published and they had no intention of

affixing notice at that time. See supra note [4]. Under a

common sense reading of 405(a)(2), these omitters could

subsequently "discover" their omissions of copyright notice when

they are later apprised of the legal significance of their

failure to provide notice. See M. Kramer Mfg. Co., Inc. v.

Andrews, 783 F.2d 421, 443 & n.21 (4th Cir. 1986); Sparkle Toys,

780 F.2d at 191; Shapiro, 764 F.2d at 73 n.5; Valve & Primer

Corp. v. Val-Matic Valve & Mfg. Corp., 730 F. Supp. 141, 143

(N.D. Ill. 1990); Innovative Concepts, 576 F. Supp. at 460; see

also Note, Omission of Notice, 60 N.Y. U. L. Rev. at 981 (stating

that "an individual with no knowledge whatsoever of the copyright

law could . . . "discover" its relevance and so "discover" that

the blank spot was indeed an omission"). We therefore conclude

that deliberate omissions are potentially curable and can be

discovered after the first copy of a work is published.

-14-

On the other hand, the O'Neill rule, stating that

discovery only occurs when a controversy arises over the

existence and enforceability of a copyright, simply has no basis

in the language of 405(a)(2) and we must reject it. As Nimmer

correctly points out, the language of 405(a)(2) plainly

indicates that "[i]t is the discovery of 'the omission' of

notice, not the discovery of the fact that the copyright may be

challenged, which triggers the 'reasonable effort' requirement."

Nimmer 7.13[B][3], at 7-127. There are plenty of circumstances

in which "discovery" occurs prior to a copyright dispute, such as

when counsel advises the author that he or she must provide

copyright notice to obtain copyright protection or that the

current notice is inadequate to satisfy the notice requirements.

See, e.g., M. Kramer, 783 F.2d at 443 & n.21; Sparkle Toys, 780

F.2d at 191; Shapiro & Son, 764 F.2d at 73 n.5; Val-Matic, 730 F.

Supp. at 143; Videotronics, Inc. v. Bend Electronics, 586 F.

Supp. 478, 480, 483 (D. Nev. 1984); Innovative Concepts, 576 F.

Supp. at 460. Indeed, the fact that many of these cited cases

also found that discovery occurred after a deliberate omission

was originally made at the time of first publication indicates

that the middle-ground test for determining the point of

discovery is the preferred one in practice.

In the present case, the district court concluded that

Garnier "should have known of the omission" when the Swirled Hoop

Earring was first published in April of 1988, and thus placed

Garnier's discovery of omission at the date of first publication

-15-

or soon thereafter. The court based its decision primarily on a

finding that, at the time the Swirled Hoop Earring was offered

for sale to the public in April of 1988, Garnier "had a policy of

screening its newly created pieces to determine which would or

would not be copyrighted, deferring action to first determine

marketability." The court added that despite periodic reviews of

various copyrights held by the company, Garnier waited four and

one-half years before registering its copyright in the Swirled

Hoop Earring and attaching notice, essentially waiting to see if

the Swirled Hoop Earring would become a best-selling item before

taking any action.

It must first be noted that the district court did not

hold that Garnier's omission was deliberate and thus, via the

Nimmer rule, automatically discovered upon the date of first

publication. Rather, the court found that the facts of the case

indicated that Garnier, "an international corporation, ultimately

sophisticated in the need for copyrighting," should have known

the legal consequences of its omission of copyright notice and

thus purposefully and intentionally refused to seek out the

protections of the copyright laws. Disregarding for a moment the

district court's factual findings, we hold that the court did not

err legally in this determination.

When an author makes a deliberate decision to forgo

potential copyright protection of a work by failing to affix

notice on copies, with the knowledge that copyright notice is

normally required, that author becomes aware of the legal effect

-16-

of its omission of notice and thus has discovered the omission

for purposes of 405(a)(2). Discovery can occur upon the date

of first publication if the author has this state of mind when

the first copies are distributed. Finding that conscious

decisions to forgo the expense of complying with the requirements

for a copyright can result in an immediate discovery of the

omission of notice under 405(a)(2) does no injustice to the

legislative intent to provide notice of all omissions. No cure

can be considered "reasonable" in cases where the author simply

sits back and waits to see whether his or her work will be a

best-seller, before suddenly springing into action and deciding

to claim copyright protection after a competitor invests

significant time and resources in developing a competing product.

The district court's use of the phrase "should have

known," implying an objective standard of discovery or some

concept of constructive notice, though misleading, is not

erroneous on the facts of this case. Other courts have used the

phrase "should have known" to indicate that the circumstantial

evidence points so strongly toward the author's knowledge of

copyright omission that, if in fact the author did not know of

the omission, it would be fair to say that a party in the

author's position clearly "should have known" that notice was

both required and missing from copies of his or her creative

work. Donald Frederick Evans & Assocs., 785 F.2d at 911; Val-

Matic, 730 F. Supp. at 143. We think that a circumscribed use of

this constructive notice concept is acceptable as long as courts

-17-

are careful not to extend it further than the facts warrant. For

example, it would not be acceptable to find that an author

discovers an omission of notice upon the date of first

publication merely because the author is a large and

sophisticated company with several lawyers on staff. The facts

found by the district court, namely that Garnier had a regular

process for screening new pieces for potential copyright

protection and a separate process for review of past copyrights,

are strong enough to support a finding that Garnier should have

known it omitted a required copyright notice.

The court's factual findings, however, are not

supported by the record, at least for purposes of summary

judgment. Because the district court granted summary judgment in

favor of Andin, we must review its decision de novo, to determine

whether the record, viewed in the light most favorable to Garnier

and with all reasonable inferences drawn in Garnier's favor,

presents any genuine issues of material fact and whether Andin is

entitled to judgment as a matter of law. Serrano-P rez v. FMC

Corp., 985 F.2d 625, 626 (1st Cir. 1993); Pagano v. Frank, 983

F.2d 343, 347 (1st Cir. 1993). Summary judgment may not be

granted if the evidence is such that a reasonable jury could

return a verdict for Garnier. Serrano-P rez, 985 F.2d at 626;

Pagano, 983 F.2d at 347.

Our review of the record in this case reveals that

critical factual issues are disputed or unproven. In particular,

it is disputed whether, at the time that the Swirled Hoop Earring

-18-

was first published in April of 1988, Garnier had a process for

screening jewelry pieces for potential copyright protection,

whether Garnier had a review process for existing copyrights, and

whether Garnier even held any United States copyrights or knew

anything about copyright requirements in the United States.

Garnier's export manager, Christian Victor, stated in a detailed

affidavit that when the Swirled Hoop Earring was introduced in

April of 1988, Garnier had no experience or expertise with United

States copyright laws, had never applied for registration of a

copyright in the United States, and had no internal procedures

for determining copyrightability, copyright notice requirements,

or other aspects of copyright protection for new or existing

jewelry works under United States law.

According to the record, the first United States

copyright obtained by Garnier was in October of 1988, six months

after the Swirled Hoop Earring was first published. Although

Garnier held copyrights in approximately 25 to 30 product designs

out of the 500 products in its line, there is no evidence Garnier

held any United States copyrights prior to October of 1988. The

only evidence regarding copyright screening procedures or review

processes is some rather equivocal deposition testimony from

Garnier's Vice President of United States Operations, Vincent

Ferrante. It is not clear from Ferrante's testimony how thorough

and comprehensive the alleged "screening" and "review" processes

really were, such that they would be likely to include a

consideration of copyright protection for a jewelry piece like

-19-

the Swirled Hoop Earring. Ferrante did testify that Garnier

makes a special effort to protect copyrights in its "signature

pieces" and that the Swirled Hoop Earring was considered one such

piece. Ferrante never explained, however, what those "special

efforts" were, whether those efforts were in effect in 1988, or,

if they were, whether they actually applied to the Swirled Hoop

Earring. Victor stated in his affidavit that the Swirled Hoop

Earring never went through any review or screening process.

More importantly, Ferrante stated that he was "not

sure" when Garnier started its copyright screening and review

processes. Ferrante began working at Garnier in the fall of 1990

and he testified that when he arrived, Garnier had a "standard

policy" to obtain copyrights on their designs. The only evidence

that some type of copyright screening or review policy was in

place at Garnier when the Swirled Hoop Earring was first

published is Ferrante's answer to the following question by

Andin's counsel: "Does the [standard] policy go back to at least

1985?" to which Ferrante responded: "I believe it did."

We conclude that this evidence is insufficient to

support the court's finding, on summary judgment, that Garnier

discovered its omission of copyright at the time it first

published the Swirled Hoop Earring.

There also exists a genuine issue of fact as to whether

Garnier discovered its omission of copyright at some point

between April of 1988, when the Swirled Hoop Earring was first

published, and July of 1992, when Garnier registered the Swirled

-20-

Hoop Earring design. Although some sort of copyright review and

screening process was in place at Garnier during this time, the

exact nature and extent of the process is not clear from

Ferrante's testimony. Ferrante never testified that any of the

company's screening or review procedures were applied

retroactively to jewelry pieces developed prior to the initial

institution of those procedures. Furthermore, Victor stated in

his affidavit that the first review process for United States

copyrights was begun sometime in 1990 and that it did not

function retroactively to include pieces like the Swirled Hoop

Earring. Victor also stated that up until November of 1990, the

company only sought copyright protection for animal designs, and

not for designs like the Swirled Hoop Earring. While a

reasonable factfinder could infer that Garnier's copyright review

process led to a "discovery," sometime prior to July of 1992, of

the fact that all non-noticed pieces in its line of jewelry,

including the Swirled Hoop Earring, were subject to forfeiture of

United States copyright protection unless notice was attached to

all copies of those works,6 such an inference is not compelled

by the evidence. On the contrary, the summary judgment standard

requires that we indulge all reasonable inferences in favor of

Garnier, Serrano-P rez, 985 F.2d at 626, and it is reasonable to

infer that Garnier did not consider the absence of notice, and

6 In other words, Garnier would have, or should have, become
aware of the consequences of omission, transforming its
thoughtless omission into a purposeful decision to forgo
copyright notice, and thus discovering its omission.

-21-

the legal significance of such absence, until it found out Andin

had copied the design in July of 1992.

In sum, because a genuine factual dispute exists as to

whether Garnier's discovery occurred prior to July of 1992, when

Garnier claims discovery occurred, summary judgment cannot be

granted on the basis that Garnier discovered the omission before

July of 1992. Despite this finding, however, we may still uphold

the district court's judgment if we find that, as a matter of

law, Garnier was still required to cure the lack of notice on

certain copies of the Swirled Hoop Earring and subsequently

failed to make reasonable efforts to effect such a cure. See

Medina-Mu oz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7 (1st

Cir. 1990) (stating that in reviewing summary judgment orders, as

in other contexts, we are free to affirm the district court on

any independently sufficient ground supported by the record).

Accordingly, we proceed on the assumption that Garnier discovered

its omission in July of 1992 and address whether Garnier

nevertheless forfeited its copyright because of a failure to

satisfy the cure requirements provided in 405(a)(2).

2. To Which Copies, If Any, Must Notice Be Attached To

Effect A Cure?

As stated earlier, the reasonable effort requirement in

the cure provision applies to all copies that are "distributed to

the public in the United States after the omission has been

discovered." 17 U.S.C. 401(a)(2). Thus, Garnier need not

affix notice to copies of its Swirled Hoop Earring already

distributed to the public before July of 1992, the date at which

-22-

we assume Garnier discovered its omission of notice. See Forry,

Inc. v. Neundorfer, Inc., 837 F.2d 259, 265 (6th Cir. 1988);

Nimmer 7.13[B], at 7-122.

Garnier began affixing notice to all copies of the

Swirled Hoop Earring it distributed after the discovery date,

July of 1992, and, furthermore, disposed of all copies of the

Swirled Hoop Earring without notice in its inventories at that

time.

The only remaining copies that are potentially subject

to the cure requirements, therefore, are those earrings

manufactured before July of 1992 and sent to Garnier's customers,

but not yet sold to the public, by July of 1992. At issue then

are only those copies of the Swirled Hoop Earring without notice

that remained in the retail inventories of Garnier's retail

customers as of July, 1992.

Normally, a copyright owner has an obligation under

405(a)(2) to add copyright notice to copies distributed to

retail dealers but not yet sold to the public. Lifshitz v.

Walter Drake & Sons, Inc., 806 F.2d 1426, 1434 (9th Cir. 1986);

M. Kramer, 783 F.2d at 444; Shapiro & Son, 764 F.2d at 74.

Garnier argues, however, that it need not take any efforts to

cure the absence of notice on these copies because they had not

been distributed to the public before the effective date of the

Bern Convention amendments to the copyright statute (that is, the

BCIA). As stated earlier, the BCIA eliminated the notice

requirement for copyright protection as of March 1, 1989, but

-23-

retained the cure provision in 405(a) for copies distributed

before that date. Garnier argues that the proper interpretation

of the BCIA and the new 405(a) is that the notice requirement

is eliminated for all copies distributed after March 1, 1989,

even if other copies of the same work were distributed without

notice before March of 1989.7 Andin argues, and the district

court held, that once copies in a work are distributed without

notice before March 1, 1989, the obligation to cure retained in

405(a) attaches to all copies in the work, including those

published after the BCIA took effect.

The language of 405(a) is critical to resolving this

issue, and, not surprisingly, the language is ambiguous. The

statute states in relevant part:

With respect to copies and phonorecords
publicly distributed [before March 1,
1989], the omission of copyright notice
. . . does not invalidate the copyright
in a work if . . . (2) . . . reasonable
effort is made to add notice to all
copies or phonorecords that are
distributed to the public in the United
States after the omission has been
discovered.

Garnier correctly points out that the statute could reasonably be

interpreted as stating: "With respect to only those copies

published before 1989, a reasonable effort to add notice is still

7 Garnier recognizes that if it was deemed to have discovered
the omission of notice in April of 1988 and then failed to cure
in a reasonable time thereafter, it would have forfeited its
copyright in the Swirled Hoop Earring and the design would pass
into the public domain, regardless of the provisions in the BCIA
amendments. Thus, Garnier is not asserting that the BCIA can be
read to resurrect a right that did not exist prior to the date
that it went into effect.

-24-

required, but with respect to copies published after March 1989,

notice is not required." Garnier reasons that if Congress wanted

to adopt Andin's interpretation, it would have written the

statute to read: "With respect to works" first published before

March 1989, instead of "With respect to copies" first published

before March 1989.8

Andin's interpretation, however, is a more convincing

construction of 405(a). Plainly read, the statute provides

that the omission of copyright notice on copies distributed

before March 1, 1989, does not result in forfeiture of copyright

"in a work" if the proper cure is made pursuant to 405(a)(1),

(3), or, in this case, 405(a)(2). Under 405(a)(2), the

author must make a reasonable effort "to add notice to all

copies" that "are distributed to the public" after the omission

has been discovered. This language indicates that all copies

that "are" presently distributed, of a work for which unnoticed

8 There is no merit to Garnier's claim that Congress initially
considered making the amended version of 405(a) applicable to
"works first published" before March 1, 1989, but later rejected

such language in favor of "copies first published" before March

1, 1989. To the contrary, the House Report cited by Garnier for
its argument indicates that Congress always intended the current
language in 405(a) to apply the cure requirements to all
copies, including those distributed after March 1989, of a work
first published before March 1989. See H.R. 100-609, reprinted

at 6 Nimmer on Copyright App. 32, at 32-1 through 32-45. The

bill accompanying the House Report amended 405(a) in exactly
the same fashion that 405(a) was eventually amended. See 6

Nimmer App. 32, at 32-5 (presenting text of bill which contained

the exact amendment eventually adopted for 405(a), at Sec.
9(e)(2) of the bill). The report itself then states that
"[c]urrent notice requirements are unchanged for works first

published before the effective date of the Act." Id. at 32-45

(emphasis added). The report thus interpreted the present
language in the same way that the district court interpreted it.

-25-

copies were published at a time when notice was required, must be

cured, regardless of when those copies are distributed. Congress

said "all" copies, and did not limit the cure requirements to

works that "were distributed prior to the effective date of the

BCIA." See Encore Shoe Corp., 18 U.S.P.Q. 2d 1874, at n.9 (D.

Mass. 1991) ("[I]f the pre-BCIA publications bear defective

notice, then 'a reasonable effort' must be made to add notice to

all copies after the defective notice has been discovered, even

if discovery occurs after March 1, 1989."); accord Nimmer

7.13[B][2], at 7-120 n.54.

Garnier argues that "all copies" merely refers to all

copies within the subset of copies distributed prior to March 1,

1989. Garnier grounds this assertion in the language of the

introductory sentence of 405(a), which states: "With respect to

copies and phonorecords publicly distributed [before the

effective date of the BCIA] . . . ." According to Garnier, this

introductory phrase defines the set of copies to which the rest

of 405(a), including the cure requirements in 405(a)(2),

applies. Though plausible, this construction strains the

language of the statute. Further, in view of the fact that

Congress, in enacting the BCIA, had made changes to 405(a) so

as to limit its applicability only to those instances where the

omission of notice had first occurred prior to March 1, 1989, the

failure to limit the remedial cure provision to just those copies

cannot be said to have been an oversight. See St. Martin

Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 786-88

-26-

(1981) (Congress in amending one section of a statute is not

presumed to have intended an amendment to another section of the

statute which had not been altered).

Contrary to Garnier's assertion, the legislative

history for 405(a) is indeterminate as to the present issue

because it essentially parrots the language employed in the text

of the statute itself. See S. Rep. No. 100-352 at 45, reprinted

in 1988 U.S.C.C.A.N. 3706, 3742. The House Report attached to a

preliminary version of the BCIA bill actually contradicts

Garnier's interpretation of the statute. See supra note [8].

While Congress speaks of limiting the "applicability" of the

notice provisions in the copyright statute to copies distributed

before March 1, 1989, see S. Rep. No. 100-352 at 45, reprinted in

1988 U.S.C.C.A.N. 3706, 3742, nowhere does Congress state an

intention to alter the then-existing pre-BCIA cure requirements

set out in 405(a)(2), which mandate that an author add notice

to "all copies" of a work.

Garnier further argues that Andin's interpretation of

the BCIA-amended 405(a) conflicts with the overall purpose of

the BCIA which was to bring United States copyright law in line

with the Berne Convention by eliminating the requirement that

notice of copyright be affixed to copies of a work. We disagree.

First of all, the BCIA applies prospectively, as evidenced by the

retention of 405(a). Thus, applying forfeiture rules for lack

of notice to works first published before the BCIA went into

effect does not conflict with the general goals of the Act.

-27-

Furthermore, Congress adopted a "minimalist approach" in the

BCIA, amending the Copyright Act "only insofar as it is necessary

to resolve the conflict [between U.S. law and the Berne

Convention] in a manner compatible with the public interest,

respecting the pre-existing balance of rights and limitations in

the Copyright Act as a whole." H.R. 100-609, reprinted at 6

Nimmer on Copyright, App. 32, at 32-20. Congress did not intend

to adopt the Berne Convention wholesale; the amended statute

itself makes it clear that the United States Copyright Act, and

not the Berne Convention, controls disputes arising under the

copyright laws. 17 U.S.C. 104(c) ("No right or interest in a

work eligible for protection under this title may be claimed by

virtue of, or in reliance upon, the provisions of the Berne

Convention, or the adherence of the United States thereto"); see

also S.Rep. 100-352, at p. 41, reprinted in 1988 U.S.C.C.A.N.

3706, at 3738 (cautioning courts "to resolve issues of the

existence, scope, or application of rights in works subject to

copyright through the normal processes of statutory

interpretation and the application of common law precedents, as

appropriate, rather than by reference to the provisions of Berne

or the fact of U.S. adherence to the Convention.").

For the foregoing reasons, therefore, we hold that

405(a) imposes a cure requirement for all copies of any work

which was first published prior to the effective date of the

BCIA. In this case, the cure requirement applies to all copies

of Garnier's Swirled Hoop Earring remaining in retail inventories

-28-

as of July of 1992.

B. Was Garnier's Cure Adequate?

Having determined that Garnier must make reasonable

efforts to add notice to copies in Garnier's customers' retail

inventories as of July 1992, we must determine whether Garnier's

actual cure efforts were reasonable, as a matter of law, for

purposes of Andin's summary judgment motion. The district court

based its finding that Garnier's cure efforts were not reasonable

at least in part on the assumption that Garnier discovered its

omission in April of 1988 and then waited over four years before

adding notice to its Swirled Hoop Earrings. Although we found

this assumption erroneous for summary judgment purposes, the

court's decision can nevertheless be upheld on the alternative

finding that Garnier's cure efforts were insufficient as a matter

of law even under the assumption that Garnier was only required

to add notice to copies of the Swirled Hoop Earring in retail

inventories as of July 1992, and thus did not delay its cure

efforts. Medina-Mu oz, 896 F.2d at 7; Chamberlin v. 101 Realty,

Inc., 915 F.2d 777, 783 n.8 (1st Cir. 1990) (in reviewing of

summary judgment orders, we are free to affirm the district court

on any independently sufficient ground supported by the record.)

As an initial matter, Garnier argues that there were

few, if any, copies of the Swirled Hoop Earring in retail

inventories as of July 1992, and, therefore, it was not required

to take any effort to add notice to retail inventory copies to

satisfy the "reasonable effort" requirement in 405(a)(2).

-29-

Garnier points to testimony in the record to the effect that

inventories were normally depleted in the summer months because

it was the low point in the business cycle when new orders are

normally made for fall delivery. There is no dispute, however,

that at least one Swirled Hoop Earring without notice, the one

bought by Andin, was in one retailer's inventories as late as

September of 1992. More importantly, Garnier does not dispute

that it did not know whether any of its retailers had copies of

the Swirled Hoop Earring remaining in stock in July of 1992, and,

in fact, Garnier sent a letter to its fifty largest retailers

regarding the Swirled Hoop Earring on the assumption that if any

retailers had remaining inventory, it would be the larger ones.

Because the reasonable effort requirement in

405(a)(2) applies to "all" copies distributed to the public after

discovery of omission, 17 U.S.C. 405(a)(2), Garnier's

obligation to cure is triggered once Garnier has reason to

believe any of its retail customers have any Swirled Hoop

Earrings in their inventories, even if only a few items. See

generally Lifshitz, 806 F.2d at 1434 (holding that a copyright

owner has an obligation to add copyright notice to copies

distributed to retail dealers); M. Kramer, 783 F.2d at 444

(same); Shapiro & Son, 764 F.2d at 74 (same). At the very least,

Garnier is obligated to take some effort to find out if its

retailers have any earrings in stock. Garnier, however, did not

do this. We find, therefore, that because there is no dispute

that (1) at least one unnoticed Swirled Hoop Earring was in

-30-

retail inventories; (2) Garnier suspected that its largest

customers had at least a few Swirled Hoop Earrings in their

inventories; and (3) Garnier made no effort to find out for sure

whether any of its customers still held copies of its Swirled

Hoop Earring, no genuine issue of material fact exists as to

whether Garnier was obligated to take "reasonable efforts" to add

notice to copies in retail inventories. Consequently, summary

judgment in favor of Andin is not precluded on the basis that the

lack of evidence of significant amounts of inventory excuses

Garnier from taking efforts to cure potential Swirled Hoop

Earrings in retail inventories.

As we discuss below, other factors may alleviate the

need to add notice to retail inventories if, for example, such

factors make the effort required to add notice unduly burdensome

or futile. See, e.g., Shapiro & Son, 764 F.2d at 74-75. In such

circumstances, summary judgment may not be appropriate, even

though the author made no effort to add notice to inventories,

because it was reasonable not to cure those copies under the

circumstances. The mere justification that the author thought

its retail inventories would be low during the summer months,

however, does not constitute such a factor and does not excuse

the requirement to effect a cure. Garnier was therefore required

to add notice to copies of the Swirled Hoop Earring in the retail

inventories of its customers.

We are finally prepared to address the issue of whether

Garnier's cure efforts were insufficient and thus unreasonable as

-31-

a matter of law. Efforts to cure under 405(a)(2) must consist

of steps designed to "add notice to all copies" distributed after

omission of notice is discovered. 17 U.S.C. 405(a)(2).

Pursuant to 17 U.S.C. 401(c), copyright notice must be

"affixed" to each copy for which protection is desired. Failure

to "affix" a notice to the copy renders that notice legally

deficient and defective. Shapiro & Son, 764 F.2d at 72. The

legal consequences of a deficient notice are the same as those

for an omitted notice. Id. at 72 n.3; see also Lifshitz, 806

F.2d at 1432, 1434 (a defective notice constitutes no notice as a

matter of law). Accordingly, to cure an omission, the author

must add legally proper notice to all copies. To satisfy

405(a)(2), therefore, the author must take "reasonable efforts"

to add legally proper notice.

Garnier submits that it undertook two different efforts

to add copyright notice to copies of its Swirled Hoop Earring in

retail inventories: (1) it sent a letter to its fifty largest

retail customers stating that it held a copyright in the Swirled

Hoop Earring; and (2) it provided a story card to its retail

customers to accompany the sale of all its jewelry pieces.

Neither measure constitutes a legally cognizable effort,

reasonable or otherwise, to add notice to its Swirled Hoop

Earrings. The letter was altogether inadequate because it did

not "add notice" in any way to copies of the Swirled Hoop

Earring. Not only was the letter not affixed to any of the

Swirled Hoop Earrings, but it also failed to say anything about

-32-

Garnier's failure to attach copyright notice to the earring.

Furthermore, the letter did not inform retailers of the need to

attach some type of notice to the Swirled Hoop Earring or even to

tell consumers about Garnier's copyright. See, e.g., Long v. CMD

Foods, Inc., 659 F. Supp. 166, 169 (E.D. Ark. 1987). Thus, the

letter does not qualify as a legally cognizable effort to "add

notice," let alone a reasonable one.

Garnier's story cards, which stated that every Garnier

design is a "genuine copyrighted original," were also not

"affixed" to the Swirled Hoop Earring and thus constituted an

inadequate effort to add notice. Lifshitz, 806 F.2d at 1434

(finding that author's cure effort, consisting of the addition of

a defective notice, was not sufficient to represent a reasonable

effort to add notice). Moreover, the story cards were not part

of Garnier's reasonable efforts to add notice to copies of its

Swirled Hoop Earring "after the omission ha[d] been discovered"

pursuant to 405(a)(2). Rather, the cards were instituted by

Garnier two years earlier, beginning in 1990, and were provided

for all of Garnier's jewelry pieces. As such, the cards were

merely a form of inadequate notice existing at the time Garnier

discovered the omission of notice on its Swirled Hoop Earring and

not part of any effort to add notice after the omission was

discovered. Therefore, the story cards constituted something

that needed tobe cured, not a part ofthe cure efforts themselves.

We do not dispute that some inadequate cure efforts,

such as the provision of notice which is not affixed to the

-33-

copies, can still be relevant to, though not alone sufficient to

establish, the reasonableness of an author's overall cure efforts

if such efforts contribute in some way to providing actual notice

to the public of a claim of copyright. Shapiro & Son, 764 F.2d

at 74-75. In this respect, measures like Garnier's story cards,

but not Garnier's letter, could potentially enter the

reasonableness calculus under 405(a)(2) to create, in

combination with some other efforts, a material issue of fact on

the question of whether reasonable cure efforts were taken. In

this case, however, the story cards were distributed prior to the

discovery of the omission of notice and thus do not constitute a

"reasonable effort" to "add notice" to copies pursuant to the

cure requirements in 405(a)(2). Therefore, Garnier's story

cards are not cognizable as an effort to cure omission of notice.

To the extent Shapiro & Son adopts a contrary rule on this issue,

id. at 74-75, we respectfully part company with the Second

Circuit. In summary, then, we find that Garnier undertook no

legally cognizable efforts under 405(a)(2) to add notice to

retail inventories of its Swirled Hoop Earring.

Garnier maintains that even if the steps taken with

respect to retail inventories are inadequate, by themselves, to

constitute a reasonable effort to add notice, when such steps are

combined with Garnier's efforts to add complete and adequate

notice to all new Swirled Hoop Earrings produced after discovery

of omission in July of 1992, and to all Swirled Hoop Earrings

held by Garnier at that time, the totality of the efforts are

-34-

together sufficient to create a material issue of fact as to

whether Garnier took reasonable efforts to cure. See Shapiro &

Son, 746 F.2d at 75. We do not agree. Section 405(a)(2)

requires reasonable efforts to add notice to "all" copies. 17

U.S.C. 405(a)(2). Where an author makes no legally cognizable

effort to add notice to an identifiable group of copies which

lack notice, and there are no significant obstacles hindering the

author from adding notice to such copies, that author cannot be

said to have taken reasonable efforts to cure as a matter of law.

In the event that adding notice to retail inventories would have

been burdensome, unduly costly, unavailing, futile or otherwise

unreasonable, a prospective cure -- that is adding notice only to

new copies thereafter produced and distributed -- by itself can

be sufficient to constitute reasonable efforts to cure. See

Shapiro & Son, 746 F.2d at 74-75 (noting that there was a

material issue of fact as to whether the author's efforts to add

notice to items in retail inventories would have been burdensome

or unavailing). That, however, is not the case here. Unlike the

author in Shapiro & Son, Garnier does not assert that an effort

to add notice to retail inventories of the Swirled Hoop Earring

would be unavailing, overly costly or burdensome. Garnier could

have easily provided retailers with gummed labels or hang tags

for the Swirled Hoop Earrings without much cost or effort. In

this situation, adding notice to only newly produced copies and

copies in Garnier's own possession is insufficient, as a matter

of law, to constitute reasonable efforts under 405(a)(2). See,

-35-

e.g., Val-Matic, 730 F. Supp. at 144 (finding cure efforts

insufficient where author made no effort to correct copies still

in the hands of distributors where such efforts would have

imposed "little, if any, burden," despite provision of notice on

new copies); see also Videotronics, Inc., 586 F. Supp. at 480,

483. We accordingly affirm the district court's grant of summary

judgment on the ground that Garnier failed to take reasonable

efforts to cure the omission of copyright notice for its Swirled

Hoop Earring.

Affirmed, with costs to be paid by appellant.

-36-