INNOVATIVE CONCEPTS IN ENTERTAINMENT, INC., Plaintiff,

v.

ENTERTAINMENT ENTERPRISES LTD., Noma Enterprises Co., Ltd., Defendants.

No. 83 C 4732.

United States District Court, E.D. New York.

Dec. 13, 1983.

---

Cullen, Sloman, Cantor, Grauer, Scott & Rutherford, Detroit, Mich. (Raymond E. Scott, Allen W. Wark, Detroit, Mich., of counsel), Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City (William Botjer, New York City, of counsel), for plaintiff.

Bases, Lawrence, Ciovacco & Walsh, P.C., Garden City, N.Y. (Lawrence S. Lawrence, Garden City, N.Y., of counsel), for defendant Entertainment Enterprises Ltd.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Innovative Concepts in Entertainment, Inc. (Innovative) makes and distributes a coin-operated miniature hockey game called "Chexx." Defendant Noma Enterprises (Noma) makes and defendant Entertainment Enterprises (Entertainment) distributes a very similar game called "Face-Off." Entertainment holds the exclusive license to a patent which it claims covers both its game and the plaintiff's. Plaintiff filed its complaint on October 26, 1983 seeking injunctive relief and damages based upon claims of false patent marking, trade libel, false disparagement and slander, interference with contractual and advantageous business relations, unfair competition, and infringement of plaintiff's intellectual property rights. Defendant Noma, a Japanese corporation, apparently has not yet been served and did not appear in any of the proceedings discussed herein.

In essence, plaintiff claims that "Face-Off" is in most respects an exact copy of "Chexx." By order to show cause returnable October 27, 1983, plaintiff moved for a temporary restraining order or preliminary injunction enjoining Entertainment from various acts of alleged false patent marking, false disparagement, unfair competition, and infringement of intellectual property rights. The court denied a temporary restraining order, except to restrain Entertainment from circulating a certain allegedly disparaging "Comparison" between the two games.

The court held an evidentiary hearing on plaintiff's motion for a preliminary injunction on December 2, 1983. Plaintiff moved in addition for a protective order regarding defendant's notice of deposition of plaintiff's president at an allegedly inconvenient time and place. Defendant moved to dismiss for failure to state a claim.

The posture of the case has changed since the court's decision of October 27, 1983 in that plaintiff has obtained six copyright registrations in various elements of its game. Plaintiff in its brief requests leave to file a supplemental complaint to include these recently granted copyright registrations pursuant to Federal Rule of Civil Procedure 15. The court grants said leave and accordingly will consider the claims of copyright infringement.

The following constitutes the court's findings of fact and conclusions of law.

### I

Plaintiff seeks an order preliminarily enjoining defendants from a) manufacturing, selling or offering for sale any hockey game infringing plaintiff's registered United States copyrights; b) falsely marking defendants' hockey games with a United States or foreign patent or publishing any other false statements or misrepresentations regarding patents allegedly covering defendants' hockey games or infringed by plaintiff; and c) further disparagement of plaintiff's "Chexx" hockey game or "Comparisons" between plaintiff's and defendants' computer-controlled hockey games.

To obtain preliminary injunctive relief plaintiff must show:

possible irreparable harm and either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206 (2d Cir.1979).

■ As to the copyright claims, plaintiff, if it can make out a *prima facie* case of copyright infringement, is entitled to a preliminary injunction. *Dollcraft Industries, Ltd. v. Well-Made Toy Mfg. Co.,* 479 F.Supp. 1105, 1113 (E.D.N.Y.1978). A showing of "ownership of a valid copyright and copying by the defendant" establishes a *prima facie* claim for copyright infringement. *Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir. 1977).

■ Plaintiff has registered copyrights covering its hockey player figures, its game board, its sound effects, and its computer control program. There is no serious dispute that the corresponding elements of "Face-Off" are substantially identical to the copyrighted elements of "Chexx," and the court finds credible the testimony that both defendants had access to plaintiff's game and that the players, board, sound effects, and computer program of "Face-Off" are so similar to those of "Chexx" that they must be direct copies. As copying may be found from evidence that a defendant had access to the copyrighted work and that defendant's work is substantially similar to plaintiff's, *Stern Electronics, Inc. v. Kaufman,* 523 F.Supp. 635 (E.D.N.Y.1981), *aff'd,* 669 F.2d 852 (2d Cir. 1982), plaintiff here has demonstrated copying.

Entertainment disputes the validity of Innovative's copyrights, however, on two grounds. The first contention is that plaintiff's initial omission of copyright notices from its games invalidates the copyrights. The court finds credible the testimony of plaintiff's president that he conferred with counsel before introducing "Chexx" and indicated that he wished to obtain all available forms of intellectual property protection for "Chexx." Counsel applied for mechanical and design patents but did not advise plaintiff to apply a copyright notice. "Chexx" is plaintiff's first game and plaintiff's president was not aware of the possibility of copyright protection.

Thus plaintiff introduced "Chexx" in February of 1983 without any copyright notice. Plaintiff did not become aware of the possibility of copyright protection until June 1983 when plaintiff consulted other counsel in connection with another matter. Thereupon plaintiff began applying a sticker bearing copyright notice to the outside of the game. Plaintiff mailed stickers to distributors in an effort to affix notice to games already distributed.

■ Entertainment contends that, aside from the earlier omission of any notices, even the notices Innovative now uses are insufficient because the hockey players as "sculptural works" should each carry a notice and the notice of copyright in the game's sound effects does not comply with 17 U.S.C. § 402. The court finds that plaintiff's notices sufficiently cover the players pursuant to 37 C.F.R. § 201(d)(5), which states that "If a work is permanently housed in a container, such as a game or puzzle box, a notice reproduced on the permanent container is acceptable." Entertainment's contention that the players are not "permanently" housed because it is possible to open the clear plastic dome that seals the game and remove the players is frivolous. The players are obviously not intended to be removed except for replacement or repair.

■ As to the defective notice of copyright in the game's sound effects, 17 U.S.C. § 402 requires "phonorecords of sound recordings" to carry a notice consisting of, among other things, the letter "P" in a circle. Any "material objects in which sounds ... are fixed" is a "phonorecord" under 17 U.S.C. § 101. The legislative history indicates three reasons for the requirement of the special "P" symbol: "to avoid confusion between claims to copyright in the sound recording and in the musical or literary work embodied in it, [to distinguish] between copyright claims in the sound recording and in the printed text or art work appearing on the record label, album cover, liner notes," and because the

symbol has been adopted by the international "Phonograms Convention." H.R. Rep. No. 94–1476, 94th Cong., 1st Sess. 145 (1976), U.S.Code Cong. & Admin.News, pp. 5659, 5761. The "phonorecord" here is a computer chip which carries the standard "©" notice of copyright. As the recording in question is of crowd noises from an actual hockey game rather than of a separately copyrighted musical or literary work, Entertainment cannot claim to have been misled. Accordingly, the court finds that this omission will be cured pursuant to 17 U.S.C. § 405(a)(2), discussed below, if the plaintiff henceforth affixes the notice required by § 402.

■ Whether the original omission of any notice at all voids the copyrights is a more complicated issue. While the six registration certificates are *prima facie* evidence of the validity of the copyrights, 17 U.S.C. § 410(c), omission of notice places the work in the public domain unless the omission is excused pursuant to 17 U.S.C. § 405(a), which saves the validity of the copyright if:

> (1) The notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or
>
> (2) Registration for the work has been made before or is made within five years after the publication without notice and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered;

Plaintiff does not dispute that it distributed more than a "relatively small number" of games without notice. It relies upon § 405(a)(2), and has satisfied that section's first requirement by registration within five years of publication without notice. The court also finds that plaintiff made "reasonable" efforts to add notice after June 1983.

The omission of notice here was essentially the result of a mistake of law: plaintiff's president (and, apparently, its counsel) were unaware that copyright protec-tion might be available for "Chexx." There are few reported cases interpreting this section of the relatively recent copyright statute, and the court is not aware of any case deciding the issue of whether § 405(a)(2) encompasses an omission resulting entirely from a mistake of law. Such an omission is "deliberate" in the sense that it is intentional, and legislative history lends support for applying § 405(a)(2) to such a case:

> Under the proposed law a work published without any copyright notice will still be subject to statutory protection for at least five years, whether the omission was partial or total, unintentional or deliberate.

H.R.Rep. No. 94–1476, 94th Cong., 1st Sess. 147 (1976), U.S.Code Cong. & Admin. News, pp. 5659, 5763.

The plaintiff in *O'Neill Developments, Inc. v. Galen Kilburn, Inc.,* 524 F.Supp. 710 (N.D.Ga.1981) omitted notice for the first fifteen months of publication (as opposed to four months here) not because he misunderstood the law but because "he did not anticipate that anyone would ever copy the brochures." *Id.* at 713. The court there accepted the argument that "Congress could have intended that copyright owners could cure deliberate omissions by including a notice of copyright in those copies published after "discovery" of the fact that the existence of a copyright has become an issue," *id.* at 713–14, and held § 405(a)(2)'s test satisfied.

But *Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc.,* 552 F.Supp. 1305 (S.D.N.Y.1982) (Sand, J.), adopts a contrary interpretation. Dicta from Judge Sand's thorough and thoughtful opinion in that case would appear to exclude plaintiff's excuse for its "omission" from § 405(a)(2)'s purview: "It appears proper to assume that § 405(a)(2) is intended primarily to apply to instances such as those in which a party sought copyright protection and, through some inadvertence, was frustrated in an attempt to affix the statutorily required notice." *Id.* at 1313.

The court in *Beacon Looms*, however, had before it a copyright licensee who was "generally aware of the availability of copyrights" for design patterns of the kind in issue there but believed that the particular design it purchased from the copyright licensor was for some reason in the public domain. Further, § 405(a)(2)'s allowance of a period as lengthy as five years in which to cure an omission suggests that Congress wished to be more solicitous of the actual intent of the author than of the reliance interests of innocent infringers. Indeed, the interests of innocent infringers are specifically addressed and protected by 17 U.S.C. § 405(b).

The court finds that plaintiff has satisfied the requirements of 17 U.S.C. § 405(a)(2) and that its copyrights are not invalid by reason of the original omission of notice. Defendant's second contention, that the copyrights in the sound recording, hockey players and game board are invalid because those works are not original and nonfunctional, is unpersuasive. The sound recording was recorded at an actual hockey game but was then extensively edited down to a short segment that qualifies as a "compilation" pursuant to 17 U.S.C. § 101. The hockey players and game board are not barred from holding copyright by the requirement that "pictorial, graphic, and sculptural" works "shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned ...." 17 U.S.C. § 101. It is doubtful that the hockey players are "utilitarian" articles within the meaning of that section at all; but even if they are, there are obviously many ways of sculpting a hockey player, and defendant's players are identical to plaintiff's. Similarly, protecting the particular configuration of plaintiff's game board, with its uniquely shaped "snow banks," does not preempt a competing, non-infringing miniature hockey game.

Plaintiff has met its burden for preliminary injunctive relief on its copyright claims. It has not, however, with regard to the claim for patent mismarking pursuant to 35 U.S.C. § 292. The applicable test is not whether the product sold by the defendant fails to "read on" the claim of the patent but whether the defendant had an honest belief that the patent covered the articles marked. *Brose v. Sears, Roebuck & Co.*, 455 F.2d 763 (5th Cir.1972). Finally, the court denies the request for preliminary relief against further acts of "disparagement" except to continue the injunction against distribution by the defendant of the "Comparison" introduced at the hearing on October 27, 1983.

## II

Plaintiff moved for a protective order concerning the time and place of the deposition of plaintiff's president. In light of defendant's opportunity to cross-examine plaintiff's president at the preliminary injunction hearing, the court cannot say whether the issue is moot. Plaintiff's motion is therefore denied without prejudice.

## III

Defendant's motion to dismiss the complaint is denied.

## IV

Plaintiff's motion for a preliminary injunction is granted to the following extent and otherwise denied.

The court will sign an appropriate order preliminarily enjoining defendant Entertainment, its officers, agents, servants, employees, attorneys and all those in privity with defendant and all those acting in concert with or under the authority of defendant during the pendency of this suit from the following: 1) Making, selling, offering for sale, promoting, displaying or advertising defendant's infringing "Face-Off" hockey game; 2) Making, selling, offering for sale, promoting, displaying or advertising any game, including hockey figures, game board (restricted to the "snow banks" at two corners of the playing surface), sound effects or a computer program, which is substantially similar to such elements of defendant's infringing "Face-

Off" hockey game or which otherwise infringes any of plaintiff's registered copyrights.

The preliminary injunction entered on October 27, 1983 restraining defendant from distributing a certain disparaging "Comparison" shall continue during the pendency of this suit.

Plaintiff's motion for a protective order is denied without prejudice. Defendant's motion to dismiss the complaint is denied.

Submit order including provision for a bond.

So ordered.