USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1446 CHARLES GARNIER, PARIS, Plaintiff - Appellant, v. ANDIN INTERNATIONAL, INC., ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Selya and Cyr, Circuit Judges. ______________ _____________________ John D. Deacon, Jr., with whom Flanders & Medeiros, Inc., ____________________ __________________________ was on brief for appellant. Julius Rabinowitz, with whom Josephine Bachmann, Kuhn & __________________ ___________________ ______ Muller, Esqs., William Richard Grimm, Christopher M. Neronha and _____________ ______________________ ______________________ Hinckley, Allen & Snyder, were on brief for appellees. ________________________ ____________________ October 7, 1994 ____________________ TORRUELLA, Circuit Judge. This case requires us to _____________ determine the proper application of the so-called "cure" provision of the copyright laws, 17 U.S.C. 405(a), which allows authors seeking copyright protection to remedy a prior failure to affix notice of copyright to copies of their creative work in order to avoid forfeiting protection of the copyright laws. Because the requirement of copyright notice was recently removed from the statute, some confusion has arisen over the application of the cure provision in cases where copies without notice were distributed before or after the change in the law. We are presented here with such a case. The district court found that the cure requirements applied in this case and granted summary judgment on the ground that a proper cure was not effected. Although we disagree that some of the facts relied upon by the district court are undisputed, we find that the court's legal conclusions are correct and affirm the judgment based on an alternative version of facts that are not in dispute. I. BACKGROUND I. BACKGROUND Plaintiff-appellant, Charles Garnier, Paris ("Garnier") is a French company engaged in the business of designing, manufacturing and selling fine jewelry around the world. In 1987, a Garnier employee designed a piece of jewelry known as the Swirled Hoop Earring. Garnier first showed and offered the Swirled Hoop Earring for sale publicly in April of 1988. Garnier has distributed the Earring ever since to customers internationally and in the United States. -2- Defendants-appellants Andin International, Inc. and Jotaly, Ltd., a corporate affiliate of Andin, (collectively referred to as "Andin") manufacture and sell jewelry in the United States. In 1990, Andin began manufacturing and selling identical copies of the Swirled Hoop Earring without Garnier's knowledge or authorization. In July of 1992, Garnier discovered that Andin was producing and distributing infringing copies of its Swirled Hoop Earring. Garnier immediately registered its copyright in the earring at that time,1 asserting that this was the first time it had ever considered seeking copyright protection for that piece. Prior to the registration of the Swirled Hoop Earring design in July of 1992, none of Garnier's Swirled Hoop Earrings carried a notice of copyright.2 After registering the Swirled Hoop Earring, Garnier's factory immediately began placing notice of copyright on every copy of the Swirled Hoop Earring produced thereafter. Garnier claims that, once it discovered Andin had copied the Swirled Hoop Earring, it discarded all remaining Swirled Hoop Earrings in its own inventories that did not have proper notice, and refrained from delivering any of the earrings without notice to its retail customers. Thus, all of Garnier's ____________________ 1 The Swirled Hoop Earring is copyrightable as an original sculptural work. 17 U.S.C. 102(a)(5). 2 Copyright notice for jewelry consists of the copyright symbol or the word "Copyright," followed by the name of the owner of the copyright, "affixed" to each copy in such a manner as "to give reasonable notice of the claim of copyright." 17 U.S.C. 401(b) & (c). -3- distributions of the Swirled Hoop Earring after July of 1992 contained notice of copyright. The parties dispute whether copies of the Swirled Hoop Earring existed in retail stores selling Garnier's jewelry as of July of 1992. Garnier's customers consist of independent retail jewelers, retail jewelry chains, multiple store locations and department stores. Although there are 150 such customers, only 50 are continuing or repeat costumers. Garnier claims that its customers had little, if any, inventory of the Swirled Hoop Earring at the time Garnier "discovered" the need to provide copyright notice in July of 1992. According to Garnier, mid- summer is the low point in the business cycle for retail jewelry because inventories are used up and new orders go out for fall delivery. In September of 1992, however, Andin purchased a Swirled Hoop Earring at Bloomingdale's, one of Garnier's customers, which did not bear any copyright notice. Garnier also sent a letter to its fifty largest customers stating that it had registered a copyright in the Swirled Hoop Earring. One Garnier official admitted that the letter was sent in case any of the retailers still had the earring in their inventories. Ultimately, Garnier simply did not know how many Swirled Hoop Earrings its retailers still had in their inventories as of July of 1992. The letter that Garnier sent to its fifty largest customers was the only remedial effort taken by Garnier with respect to the Swirled Hoop Earrings still remaining in retail -4- store inventories in direct response to the July, 1992 discovery __________________ of Andin's infringement. In the letter, Garnier stated that it held a copyright in the Swirled Hoop Earring, but did not indicate that copyright notice had been omitted from the earrings in the retailers' inventories or that there was a need to rectify the omission by adding notice of copyright. Garnier claims it did not send the letter to the other 100 retail customers because those customers were only one-time purchasers of the Swirled Hoop Earring, and they were therefore unlikely to have any Swirled Hoop Earring inventory left by July of 1992. Garnier never offered to send a tag or label bearing a copyright notice to the retailers for placement on any unnoticed items in their inventory. Garnier did have another arrangement, already in place by the time Garnier discovered Andin's infringement in July of 1992, that was designed to provide a general notice of copyright. Beginning in 1990, Garnier provided all its retail costumers with a "story card" and instructed them to include the card with the sale of all Garnier products to purchasing consumers. The story card stated, among other things, that the purchased piece is a "Charles Garnier of Paris original . . . genuine 18 karat gold copyrighted design," and that "every Charles Garnier design is a genuine copyrighted original." The card says nothing in particular about the Swirled Hoop Earring, the lack of copyright notice, or the need to affix notice to unnoticed pieces. Although the story card was not attached or affixed to the -5- jewelry pieces themselves, Garnier claimed that its retailers gave the story card to every customer who bought Garnier jewelry. Garnier occasionally checked to confirm this but generally relied on the retailers' word that they were providing the story card to purchasers of Garnier jewelry. Garnier brought this action in October of 1992, asserting two claims of copyright infringement against Andin. Count I of the complaint alleged that Andin had infringed Garnier's copyright in the Swirled Hoop Earring and Count II alleged that Andin had infringed Garnier's copyright in another piece of jewelry. The claim in Count II was eventually settled and is not presently before us. In May of 1993, Garnier filed a motion for a preliminary injunction against Andin's continuing manufacture and distribution of copies of Garnier's Swirled Hoop Earring. Andin then filed a motion for partial summary judgment as to Count I of the complaint. Following a hearing, the district court denied Garnier's motion for a preliminary injunction and granted Andin's motion for summary judgment as to Count I. The court concluded that Garnier's copyright in the Swirled Hoop Earring had been forfeited because Garnier had omitted notice of copyright from the Swirled Hoop Earring when it was first published and subsequently failed to take reasonable efforts to cure that omission. Entry of final judgment as to Count I was made by the court under Rule 54(b) on March 2, 1994. Garnier appealed and, after ordering the district court to provide a more expansive statement of the reasons for its Rule -6- 54(b) certification, we heard the present appeal. II. ANALYSIS II. ANALYSIS A. What Efforts To Cure, If Any, Are Required? A. What Efforts To Cure, If Any, Are Required? __________________________________________ This case centers around the "cure" provision of the copyright statute, 17 U.S.C. 405(a). This provision enables would-be copyright holders who have failed to provide proper notice on a creative work for which they seek protection under the copyright laws to avoid forfeiture of protection for that work by taking various remedial measures.3 See 2 Nimmer on ___ _________ ____________________ 3 17 U.S.C. 405(a) provides: (a) Effect of Omission on Copyright. -- (a) Effect of Omission on Copyright. -- With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, the omission of the copyright notice described in sections 401 through 403 from copies or phonorecord publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if -- (1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or (2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or (3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or -7- Copyright 7.13[B] (1985) [hereinafter Nimmer]; Note, Omission _________ ______ ________ of Copyright Notice Under Section 405(a): What Kind of Oxymoron _________________________________________________________________ Makes a Deliberate Error?, 60 N.Y. U. L. Rev. 956 (1985) ___________________________ [hereinafter Note, Omission of Notice]. Under 405(a)(2), ___________________ failure to affix proper notice to certain copies of a work will not result in forfeiture of copyright protection if, within five years after the first publication of a copy without notice, the work is registered at the Copyright Office and a "reasonable ___ effort" is made by the author to add notice to all copies distributed to the public "after the omission has been discovered." 17 U.S.C. 405(a)(2); Princess Fabrics, Inc. v. _______________________ CHF, Inc., 922 F.2d 99, 103 (2d Cir. 1990); Donald Frederick __________ ________________ Evans v. Continental Homes, Inc., 785 F.2d 897, 905-12 (11th Cir. _____ _______________________ 1986); Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, ____________________ __________________ 193-94 (2d Cir. 1985); Shapiro & Son Bedspread Corp. v. Royal _______________________________ _____ Mills Assoc., 764 F.2d 69, 72-75 (2d Cir. 1985). ____________ Prior to March of 1989, notice of copyright was mandatory, thus proper cure for omission of copyright notice was required for all copies distributed to the public after the omission of notice was discovered. Nimmer 702[C], at 7-15 ______ through 7-16. In 1988, the copyright statute was amended by the Berne Convention Implementation Act of 1988 ("BCIA"), Pub. L. No. 100-568, 102 Stat. 2853 (amending 17 U.S.C. 101 et seq.), in ______ ____________________ phonorecords, they bear the prescribed notice. Garnier has not claimed that 405(a)(1) or 405(a)(3) apply in this case, so we confine our discussion to 405(a)(2). -8- order to bring the United States in line with the Berne Convention on Copyright, an international convention aimed at harmonizing copyright law around the world. Nimmer 702[B], at ______ 7-14. Consequently, effective March 1, 1989, the attachment of notice of copyright is no longer required to gain copyright protection for creative works, although it is still encouraged through various incentives. Id. at 7-14, 7-16; see, e.g., Direct __ ___ ____ ______ Marketing of Va., Inc. v. E. Mishan & Sons, Inc., 753 F. Supp. _______________________ _______________________ 100, 104 n.8 (S.D.N.Y. 1990). The aforementioned cure requirements provided in 405(a), however, are retained in the amended statute and apply to "copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the [BCIA]." 17 U.S.C. 405(a); Encore Shoe ___________ Corp. v. Bennett Indus., Inc., 18 U.S.P.Q. 2d 1874 n.9 (D. Mass. _____ ____________________ 1991); Nimmer 7.13[B]. One issue bedeviling this case is ______ whether the BCIA amendments have eliminated Garnier's need to cure some or all of the copies of the Swirled Hoop Earring, given that Garnier first distributed copies prior to the effective date of the BCIA amendments, but also distributed copies after the amendments went into effect. Before we address that issue, however, we must first review the district court's determination of the point at which Garnier "discovered" its omission of copyright notice for purposes of the cure provision. 17 U.S.C. 405(a)(2) (requiring a "reasonable effort" to add notice to all copies distributed to the public after the omission of notice "has been discovered"). ____________________ -9- The discovery date is important for determining the date at which cure efforts should commence and for determining whether the "delay," if any, between discovery and cure is such that subsequent cure efforts can no longer be considered reasonable. See, e.g., Princess Fabrics, 922 F.2d at 103; Valve & Primer ___ ____ _________________ _______________ Copr. v. Val-Matic Valve & Mfg. Corp., 730 F. Supp. 141, 143-44 _____ _____________________________ (N.D. Ill. 1990). 1. When was the Omission of Copyright Notice 1. When was the Omission of Copyright Notice ________________________________________________ Discovered? Discovered? __________ Garnier claims that it discovered the omission of copyright notice on copies of its Swirled Hoop Earring in July of 1992 -- when Garnier found out that Andin had produced and sold copies of the Swirled Hoop Earring design. The district court found, however, that Garnier "should have known" of the omission of notice when Garnier initially distributed the Swirled Hoop Earring in April of 1988. The district court concluded, therefore, that Garnier "discovered" the omission of notice on that date. On appeal, Garnier asserts that the court erred both legally and factually. We agree only with the latter assertion. Courts and commentators have developed several different approaches toward the problem of determining what constitutes the "discovery" of omission of copyright notice, and at what point discovery occurs for purposes of the cure provision in 405(a). At one extreme is the rule announced in O'Neill _______ Devs, Inc. v. Galen Kilburn, Inc., 524 F. Supp. 710, 714 (N.D. ___________ ____________________ Ga. 1981), which states that "discovery" relates to "the fact -10- that the existence of a copyright has become an issue." In other words, discovery occurs when a copyright holder finds out that someone else is copying his or her creative work. The court in O'Neill did not state any authority or reason for its rule; _______ rather, it focused on discrediting an alternative rule endorsed in Nimmer on Copyright, Nimmer 7.13[B][3], at 7-124.2 through ___________________ ______ 7-130. According to Nimmer, any deliberate or intentional omission (that is, omissions that are not "inadvertent,"4) are automatically discovered upon the date when a copy of the work is first published or publicly distributed. Id. at 7-125 through 7- __ 126; see also Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc., ________ ___________________ ___________________________ 552 F. Supp. 1305, 1310-12 (S.D.N.Y. 1982), criticized by Hasbro ______________ ______ Bradley, 780 F.2d at 195-96. Nimmer reasons that if an omission _______ is deliberate, "it must be immediately known (or 'discovered')." Nimmer 7.13[B][3], at 7-125. "Simply put, one cannot 'discover' ______ ____________________ 4 Inadvertent omissions include those occurring when the author intended to affix notice to published copies but his or her attempts to do so were frustrated because of some mechanical or publishing mistake that left notice off some or all of the copies. Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc., 552 F. __________________ __________________________ Supp. 1305, 1313 (S.D.N.Y. 1982); Note, Omission of Notice, 60 __________________ N.Y. U. L. Rev. at 957-59. Omissions occurring because the author never thought about, or knew of, the availability of copyright protection or the requirement to affix notice ("thoughtless omitters") or because the author mistakenly thought protection was unavailable ("mistake of law omitters") have usually been considered to be deliberate, as opposed to __________ inadvertent. The omissions are labelled "deliberate" because the authors in these situations were aware of the absence of notice at the time their work was first published and they never intended to affix notice in the first place. See Note, Omission ___ ________ of Notice, 60 N.Y. U. L. Rev. at 959-60, 968-71; see, e.g., __________ ___ ____ Sparkle Toys, 780 F.2d at 191, 195-96; O'Neill, 524 F. Supp. at ____________ _______ 712, 715; Innovative Concepts in Entertainment, Inc. v. ________________________________________________ Entertainment Enters. Ltd., 576 F. Supp. 457, 460 (E.D.N.Y. ____________________________ 1983). -11- an omission that has been deliberate." Beacon Looms, 552 F. ____________ Supp. at 1310. The O'Neill court argued that the Nimmer formulation _______ clearly conflicted with the legislative intent behind 405(a). O'Neill, 524 F. Supp. at 714. Nimmer's rule essentially removes _______ any chance for those who deliberately and intentionally omit copyright notice to successfully cure under the "reasonable effort" requirement of 405(a)(2).5 See Nimmer 7.13[B][3], ___ ______ at 7-125. Yet, when Congress amended the Copyright Law in 1976, it expressed a clear intention to eliminate the previous distinction, made since 1909, between purposeful or deliberate omissions, which were subject to automatic forfeiture of copyright protection, and unintentional omissions, which were curable, so that all omissions could be cured by reasonable efforts. See Sparkle Toys, 780 F.2d at 195-96; O'Neill, 524 F. ___ _____________ _______ Supp. at 714; Note, Omission of Notice, 60 N.Y. U. L. Rev. at ___________________ 963-75. According to the O'Neill court, the word "discover" must _______ be read in light of the Congressional intent to make all omissions curable. O'Neill, 524 F. Supp. at 714. _______ In response, Nimmer argues that Congressional intent must give way to the plain meaning of the statutory text of ____________________ 5 This is because Nimmer's rule immediately triggers the requirement to add notice, see 405(a)(2) (requiring cure ___ efforts once the omission is "discovered"), which the copyright author will presumably fail to do within a "reasonable" time. Authors will presumably fail to cure within a reasonable time because they have just distributed copies without notice to begin with and it is unlikely they would suddenly attach notice when they could have done so in the first place. -12- 405(a)(2), which, in Nimmer's view, compels the conclusion that discovery is immediate for deliberate omissions. Nimmer ______ 7.13[B][3], at 7-125. We think that the proper interpretation of 405(a)(2) must lie somewhere between the rule described in Nimmer and the ______ rule announced in O'Neill. On the one hand, Congress intended a _______ copyright holder to be able to cure all omissions, if the holder ___ made "reasonable efforts" to add notice. See H.R. Rep. No. 1476, ___ 94th Cong., 2d Sess. 147, reprinted in 1976 U.S.C.C.A.N. 5659, ____________ 5673; see also Sparkle Toys, 780 F.2d at 195-96. Furthermore, ________ ____________ the language in 405(a)(2) concerning the addition of notice to all copies "after the omission has been discovered," 17 U.S.C. 405(a)(2), does not expressly preclude a finding that a given deliberate omission was discovered after the initial publication of a work. Sparkle Toys, 780 F.2d at 196. Thus, the plain ____________ language of the statute does not conflict with its legislative intent. Although Nimmer makes a compelling argument that one already knows, and thus cannot "discover," an omission that was made deliberately, this argument is only compelling if we limit the definition of "deliberate omission" to mean a purposeful decision to forgo copyright protection that would otherwise be available if notice were affixed to a creative work. But see _______ Sparkle Toys, 780 F.2d at 196 (noting that an assignee or _____________ licensee of the author or a company employee at a higher level of the corporate hierarchy than the deliberate omitter could -13- subsequently discover a deliberate omission, in which case the nature of the deliberate omission would be altogether irrelevant to the plausibility of a subsequent discovery, and Nimmer's argument would not be compelling under any definition of "deliberate omission"). Most courts, and Nimmer himself, however, have not so confined their definition of a deliberate omission. See cases cited supra note [4]; Nimmer 7.13[B][3], ___ _____ ______ at 7-125 n.78. For example, "mistake of law" omitters and "thoughtless" omitters are usually considered deliberate omitters because they are aware of the absence of any notice at the time their work was first published and they had no intention of affixing notice at that time. See supra note [4]. Under a ___ _____ common sense reading of 405(a)(2), these omitters could subsequently "discover" their omissions of copyright notice when they are later apprised of the legal significance of their failure to provide notice. See M. Kramer Mfg. Co., Inc. v. ___ __________________________ Andrews, 783 F.2d 421, 443 & n.21 (4th Cir. 1986); Sparkle Toys, _______ ____________ 780 F.2d at 191; Shapiro, 764 F.2d at 73 n.5; Valve & Primer _______ _______________ Corp. v. Val-Matic Valve & Mfg. Corp., 730 F. Supp. 141, 143 _____ ______________________________ (N.D. Ill. 1990); Innovative Concepts, 576 F. Supp. at 460; see ____________________ ___ also Note, Omission of Notice, 60 N.Y. U. L. Rev. at 981 (stating ____ __________________ that "an individual with no knowledge whatsoever of the copyright law could . . . "discover" its relevance and so "discover" that the blank spot was indeed an omission"). We therefore conclude that deliberate omissions are potentially curable and can be discovered after the first copy of a work is published. -14- On the other hand, the O'Neill rule, stating that _______ discovery only occurs when a controversy arises over the existence and enforceability of a copyright, simply has no basis in the language of 405(a)(2) and we must reject it. As Nimmer correctly points out, the language of 405(a)(2) plainly indicates that "[i]t is the discovery of 'the omission' of _____________ notice, not the discovery of the fact that the copyright may be challenged, which triggers the 'reasonable effort' requirement." Nimmer 7.13[B][3], at 7-127. There are plenty of circumstances ______ in which "discovery" occurs prior to a copyright dispute, such as when counsel advises the author that he or she must provide copyright notice to obtain copyright protection or that the current notice is inadequate to satisfy the notice requirements. See, e.g., M. Kramer, 783 F.2d at 443 & n.21; Sparkle Toys, 780 ___ ____ _________ _____________ F.2d at 191; Shapiro & Son, 764 F.2d at 73 n.5; Val-Matic, 730 F. _____________ _________ Supp. at 143; Videotronics, Inc. v. Bend Electronics, 586 F. ___________________ ________________ Supp. 478, 480, 483 (D. Nev. 1984); Innovative Concepts, 576 F. ___________________ Supp. at 460. Indeed, the fact that many of these cited cases also found that discovery occurred after a deliberate omission _____ was originally made at the time of first publication indicates that the middle-ground test for determining the point of discovery is the preferred one in practice. In the present case, the district court concluded that Garnier "should have known of the omission" when the Swirled Hoop Earring was first published in April of 1988, and thus placed Garnier's discovery of omission at the date of first publication -15- or soon thereafter. The court based its decision primarily on a finding that, at the time the Swirled Hoop Earring was offered for sale to the public in April of 1988, Garnier "had a policy of screening its newly created pieces to determine which would or would not be copyrighted, deferring action to first determine marketability." The court added that despite periodic reviews of various copyrights held by the company, Garnier waited four and one-half years before registering its copyright in the Swirled Hoop Earring and attaching notice, essentially waiting to see if the Swirled Hoop Earring would become a best-selling item before taking any action. It must first be noted that the district court did not hold that Garnier's omission was deliberate and thus, via the Nimmer rule, automatically discovered upon the date of first publication. Rather, the court found that the facts of the case indicated that Garnier, "an international corporation, ultimately sophisticated in the need for copyrighting," should have known the legal consequences of its omission of copyright notice and thus purposefully and intentionally refused to seek out the protections of the copyright laws. Disregarding for a moment the district court's factual findings, we hold that the court did not err legally in this determination. When an author makes a deliberate decision to forgo potential copyright protection of a work by failing to affix notice on copies, with the knowledge that copyright notice is normally required, that author becomes aware of the legal effect -16- of its omission of notice and thus has discovered the omission for purposes of 405(a)(2). Discovery can occur upon the date of first publication if the author has this state of mind when the first copies are distributed. Finding that conscious decisions to forgo the expense of complying with the requirements for a copyright can result in an immediate discovery of the omission of notice under 405(a)(2) does no injustice to the legislative intent to provide notice of all omissions. No cure can be considered "reasonable" in cases where the author simply sits back and waits to see whether his or her work will be a best-seller, before suddenly springing into action and deciding to claim copyright protection after a competitor invests significant time and resources in developing a competing product. The district court's use of the phrase "should have known," implying an objective standard of discovery or some concept of constructive notice, though misleading, is not erroneous on the facts of this case. Other courts have used the phrase "should have known" to indicate that the circumstantial evidence points so strongly toward the author's knowledge of copyright omission that, if in fact the author did not know of the omission, it would be fair to say that a party in the author's position clearly "should have known" that notice was both required and missing from copies of his or her creative work. Donald Frederick Evans & Assocs., 785 F.2d at 911; Val- _________________________________ ____ Matic, 730 F. Supp. at 143. We think that a circumscribed use of _____ this constructive notice concept is acceptable as long as courts -17- are careful not to extend it further than the facts warrant. For example, it would not be acceptable to find that an author discovers an omission of notice upon the date of first publication merely because the author is a large and sophisticated company with several lawyers on staff. The facts found by the district court, namely that Garnier had a regular process for screening new pieces for potential copyright protection and a separate process for review of past copyrights, are strong enough to support a finding that Garnier should have known it omitted a required copyright notice. The court's factual findings, however, are not supported by the record, at least for purposes of summary judgment. Because the district court granted summary judgment in favor of Andin, we must review its decision de novo, to determine __ ____ whether the record, viewed in the light most favorable to Garnier and with all reasonable inferences drawn in Garnier's favor, presents any genuine issues of material fact and whether Andin is entitled to judgment as a matter of law. Serrano-P rez v. FMC _____________ ___ Corp., 985 F.2d 625, 626 (1st Cir. 1993); Pagano v. Frank, 983 _____ ______ _____ F.2d 343, 347 (1st Cir. 1993). Summary judgment may not be granted if the evidence is such that a reasonable jury could return a verdict for Garnier. Serrano-P rez, 985 F.2d at 626; _____________ Pagano, 983 F.2d at 347. ______ Our review of the record in this case reveals that critical factual issues are disputed or unproven. In particular, it is disputed whether, at the time that the Swirled Hoop Earring -18- was first published in April of 1988, Garnier had a process for screening jewelry pieces for potential copyright protection, whether Garnier had a review process for existing copyrights, and whether Garnier even held any United States copyrights or knew anything about copyright requirements in the United States. Garnier's export manager, Christian Victor, stated in a detailed affidavit that when the Swirled Hoop Earring was introduced in April of 1988, Garnier had no experience or expertise with United States copyright laws, had never applied for registration of a copyright in the United States, and had no internal procedures for determining copyrightability, copyright notice requirements, or other aspects of copyright protection for new or existing jewelry works under United States law. According to the record, the first United States copyright obtained by Garnier was in October of 1988, six months after the Swirled Hoop Earring was first published. Although Garnier held copyrights in approximately 25 to 30 product designs out of the 500 products in its line, there is no evidence Garnier held any United States copyrights prior to October of 1988. The only evidence regarding copyright screening procedures or review processes is some rather equivocal deposition testimony from Garnier's Vice President of United States Operations, Vincent Ferrante. It is not clear from Ferrante's testimony how thorough and comprehensive the alleged "screening" and "review" processes really were, such that they would be likely to include a consideration of copyright protection for a jewelry piece like -19- the Swirled Hoop Earring. Ferrante did testify that Garnier makes a special effort to protect copyrights in its "signature pieces" and that the Swirled Hoop Earring was considered one such piece. Ferrante never explained, however, what those "special efforts" were, whether those efforts were in effect in 1988, or, if they were, whether they actually applied to the Swirled Hoop Earring. Victor stated in his affidavit that the Swirled Hoop Earring never went through any review or screening process. More importantly, Ferrante stated that he was "not sure" when Garnier started its copyright screening and review processes. Ferrante began working at Garnier in the fall of 1990 and he testified that when he arrived, Garnier had a "standard policy" to obtain copyrights on their designs. The only evidence ____ that some type of copyright screening or review policy was in place at Garnier when the Swirled Hoop Earring was first published is Ferrante's answer to the following question by Andin's counsel: "Does the [standard] policy go back to at least 1985?" to which Ferrante responded: "I believe it did." We conclude that this evidence is insufficient to support the court's finding, on summary judgment, that Garnier discovered its omission of copyright at the time it first published the Swirled Hoop Earring. There also exists a genuine issue of fact as to whether Garnier discovered its omission of copyright at some point between April of 1988, when the Swirled Hoop Earring was first published, and July of 1992, when Garnier registered the Swirled -20- Hoop Earring design. Although some sort of copyright review and screening process was in place at Garnier during this time, the exact nature and extent of the process is not clear from Ferrante's testimony. Ferrante never testified that any of the company's screening or review procedures were applied retroactively to jewelry pieces developed prior to the initial institution of those procedures. Furthermore, Victor stated in his affidavit that the first review process for United States copyrights was begun sometime in 1990 and that it did not function retroactively to include pieces like the Swirled Hoop Earring. Victor also stated that up until November of 1990, the company only sought copyright protection for animal designs, and not for designs like the Swirled Hoop Earring. While a reasonable factfinder could infer that Garnier's copyright review process led to a "discovery," sometime prior to July of 1992, of the fact that all non-noticed pieces in its line of jewelry, including the Swirled Hoop Earring, were subject to forfeiture of United States copyright protection unless notice was attached to all copies of those works,6 such an inference is not compelled by the evidence. On the contrary, the summary judgment standard requires that we indulge all reasonable inferences in favor of Garnier, Serrano-P rez, 985 F.2d at 626, and it is reasonable to _____________ infer that Garnier did not consider the absence of notice, and ____________________ 6 In other words, Garnier would have, or should have, become aware of the consequences of omission, transforming its thoughtless omission into a purposeful decision to forgo copyright notice, and thus discovering its omission. -21- the legal significance of such absence, until it found out Andin had copied the design in July of 1992. In sum, because a genuine factual dispute exists as to whether Garnier's discovery occurred prior to July of 1992, when Garnier claims discovery occurred, summary judgment cannot be granted on the basis that Garnier discovered the omission before July of 1992. Despite this finding, however, we may still uphold the district court's judgment if we find that, as a matter of law, Garnier was still required to cure the lack of notice on certain copies of the Swirled Hoop Earring and subsequently failed to make reasonable efforts to effect such a cure. See ___ Medina-Mu oz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7 (1st ____________ ___________________________ Cir. 1990) (stating that in reviewing summary judgment orders, as in other contexts, we are free to affirm the district court on any independently sufficient ground supported by the record). Accordingly, we proceed on the assumption that Garnier discovered its omission in July of 1992 and address whether Garnier nevertheless forfeited its copyright because of a failure to satisfy the cure requirements provided in 405(a)(2). 2. To Which Copies, If Any, Must Notice Be Attached To 2. To Which Copies, If Any, Must Notice Be Attached To ___________________________________________________ Effect A Cure? Effect A Cure? _____________ As stated earlier, the reasonable effort requirement in the cure provision applies to all copies that are "distributed to the public in the United States after the omission has been _____ discovered." 17 U.S.C. 401(a)(2). Thus, Garnier need not affix notice to copies of its Swirled Hoop Earring already distributed to the public before July of 1992, the date at which -22- we assume Garnier discovered its omission of notice. See Forry, ___ ______ Inc. v. Neundorfer, Inc., 837 F.2d 259, 265 (6th Cir. 1988); ____ _________________ Nimmer 7.13[B], at 7-122. ______ Garnier began affixing notice to all copies of the Swirled Hoop Earring it distributed after the discovery date, July of 1992, and, furthermore, disposed of all copies of the Swirled Hoop Earring without notice in its inventories at that time. The only remaining copies that are potentially subject to the cure requirements, therefore, are those earrings manufactured before July of 1992 and sent to Garnier's customers, but not yet sold to the public, by July of 1992. At issue then are only those copies of the Swirled Hoop Earring without notice that remained in the retail inventories of Garnier's retail customers as of July, 1992. Normally, a copyright owner has an obligation under 405(a)(2) to add copyright notice to copies distributed to retail dealers but not yet sold to the public. Lifshitz v. ________ Walter Drake & Sons, Inc., 806 F.2d 1426, 1434 (9th Cir. 1986); __________________________ M. Kramer, 783 F.2d at 444; Shapiro & Son, 764 F.2d at 74. __________ ______________ Garnier argues, however, that it need not take any efforts to cure the absence of notice on these copies because they had not been distributed to the public before the effective date of the Bern Convention amendments to the copyright statute (that is, the BCIA). As stated earlier, the BCIA eliminated the notice requirement for copyright protection as of March 1, 1989, but -23- retained the cure provision in 405(a) for copies distributed before that date. Garnier argues that the proper interpretation of the BCIA and the new 405(a) is that the notice requirement is eliminated for all copies distributed after March 1, 1989, even if other copies of the same work were distributed without notice before March of 1989.7 Andin argues, and the district court held, that once copies in a work are distributed without notice before March 1, 1989, the obligation to cure retained in 405(a) attaches to all copies in the work, including those published after the BCIA took effect. The language of 405(a) is critical to resolving this issue, and, not surprisingly, the language is ambiguous. The statute states in relevant part: With respect to copies and phonorecords publicly distributed [before March 1, 1989], the omission of copyright notice . . . does not invalidate the copyright in a work if . . . (2) . . . reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered. Garnier correctly points out that the statute could reasonably be interpreted as stating: "With respect to only those copies published before 1989, a reasonable effort to add notice is still ____________________ 7 Garnier recognizes that if it was deemed to have discovered the omission of notice in April of 1988 and then failed to cure in a reasonable time thereafter, it would have forfeited its copyright in the Swirled Hoop Earring and the design would pass into the public domain, regardless of the provisions in the BCIA amendments. Thus, Garnier is not asserting that the BCIA can be read to resurrect a right that did not exist prior to the date that it went into effect. -24- required, but with respect to copies published after March 1989, notice is not required." Garnier reasons that if Congress wanted to adopt Andin's interpretation, it would have written the statute to read: "With respect to works" first published before _____ March 1989, instead of "With respect to copies" first published ______ before March 1989.8 Andin's interpretation, however, is a more convincing construction of 405(a). Plainly read, the statute provides that the omission of copyright notice on copies distributed before March 1, 1989, does not result in forfeiture of copyright "in a work" if the proper cure is made pursuant to 405(a)(1), (3), or, in this case, 405(a)(2). Under 405(a)(2), the author must make a reasonable effort "to add notice to all ___ copies" that "are distributed to the public" after the omission ___ has been discovered. This language indicates that all copies that "are" presently distributed, of a work for which unnoticed ____________________ 8 There is no merit to Garnier's claim that Congress initially considered making the amended version of 405(a) applicable to "works first published" before March 1, 1989, but later rejected _____ such language in favor of "copies first published" before March ______ 1, 1989. To the contrary, the House Report cited by Garnier for its argument indicates that Congress always intended the current language in 405(a) to apply the cure requirements to all copies, including those distributed after March 1989, of a work first published before March 1989. See H.R. 100-609, reprinted ___ _________ at 6 Nimmer on Copyright App. 32, at 32-1 through 32-45. The __ ____________________ bill accompanying the House Report amended 405(a) in exactly the same fashion that 405(a) was eventually amended. See 6 ___ Nimmer App. 32, at 32-5 (presenting text of bill which contained ______ the exact amendment eventually adopted for 405(a), at Sec. 9(e)(2) of the bill). The report itself then states that "[c]urrent notice requirements are unchanged for works first _________________ published before the effective date of the Act." Id. at 32-45 _________ __ (emphasis added). The report thus interpreted the present language in the same way that the district court interpreted it. -25- copies were published at a time when notice was required, must be cured, regardless of when those copies are distributed. Congress said "all" copies, and did not limit the cure requirements to works that "were distributed prior to the effective date of the BCIA." See Encore Shoe Corp., 18 U.S.P.Q. 2d 1874, at n.9 (D. ___ _________________ Mass. 1991) ("[I]f the pre-BCIA publications bear defective notice, then 'a reasonable effort' must be made to add notice to all copies after the defective notice has been discovered, even if discovery occurs after March 1, 1989."); accord Nimmer ______ ______ 7.13[B][2], at 7-120 n.54. Garnier argues that "all copies" merely refers to all copies within the subset of copies distributed prior to March 1, 1989. Garnier grounds this assertion in the language of the introductory sentence of 405(a), which states: "With respect to copies and phonorecords publicly distributed [before the effective date of the BCIA] . . . ." According to Garnier, this introductory phrase defines the set of copies to which the rest of 405(a), including the cure requirements in 405(a)(2), applies. Though plausible, this construction strains the language of the statute. Further, in view of the fact that Congress, in enacting the BCIA, had made changes to 405(a) so as to limit its applicability only to those instances where the omission of notice had first occurred prior to March 1, 1989, the failure to limit the remedial cure provision to just those copies cannot be said to have been an oversight. See St. Martin ___ ___________ Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 786-88 ___________________________ ____________ -26- (1981) (Congress in amending one section of a statute is not presumed to have intended an amendment to another section of the statute which had not been altered). Contrary to Garnier's assertion, the legislative history for 405(a) is indeterminate as to the present issue because it essentially parrots the language employed in the text of the statute itself. See S. Rep. No. 100-352 at 45, reprinted ___ _________ in 1988 U.S.C.C.A.N. 3706, 3742. The House Report attached to a __ preliminary version of the BCIA bill actually contradicts Garnier's interpretation of the statute. See supra note [8]. ___ _____ While Congress speaks of limiting the "applicability" of the notice provisions in the copyright statute to copies distributed before March 1, 1989, see S. Rep. No. 100-352 at 45, reprinted in ___ ____________ 1988 U.S.C.C.A.N. 3706, 3742, nowhere does Congress state an intention to alter the then-existing pre-BCIA cure requirements set out in 405(a)(2), which mandate that an author add notice to "all copies" of a work. Garnier further argues that Andin's interpretation of the BCIA-amended 405(a) conflicts with the overall purpose of the BCIA which was to bring United States copyright law in line with the Berne Convention by eliminating the requirement that notice of copyright be affixed to copies of a work. We disagree. First of all, the BCIA applies prospectively, as evidenced by the retention of 405(a). Thus, applying forfeiture rules for lack of notice to works first published before the BCIA went into effect does not conflict with the general goals of the Act. -27- Furthermore, Congress adopted a "minimalist approach" in the BCIA, amending the Copyright Act "only insofar as it is necessary to resolve the conflict [between U.S. law and the Berne Convention] in a manner compatible with the public interest, respecting the pre-existing balance of rights and limitations in the Copyright Act as a whole." H.R. 100-609, reprinted at 6 ____________ Nimmer on Copyright, App. 32, at 32-20. Congress did not intend ____________________ to adopt the Berne Convention wholesale; the amended statute itself makes it clear that the United States Copyright Act, and not the Berne Convention, controls disputes arising under the copyright laws. 17 U.S.C. 104(c) ("No right or interest in a work eligible for protection under this title may be claimed by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto"); see ___ also S.Rep. 100-352, at p. 41, reprinted in 1988 U.S.C.C.A.N. ____ ____________ 3706, at 3738 (cautioning courts "to resolve issues of the existence, scope, or application of rights in works subject to copyright through the normal processes of statutory interpretation and the application of common law precedents, as appropriate, rather than by reference to the provisions of Berne or the fact of U.S. adherence to the Convention."). For the foregoing reasons, therefore, we hold that 405(a) imposes a cure requirement for all copies of any work which was first published prior to the effective date of the BCIA. In this case, the cure requirement applies to all copies of Garnier's Swirled Hoop Earring remaining in retail inventories -28- as of July of 1992. B. Was Garnier's Cure Adequate? B. Was Garnier's Cure Adequate? ___________________________ Having determined that Garnier must make reasonable efforts to add notice to copies in Garnier's customers' retail inventories as of July 1992, we must determine whether Garnier's actual cure efforts were reasonable, as a matter of law, for purposes of Andin's summary judgment motion. The district court based its finding that Garnier's cure efforts were not reasonable at least in part on the assumption that Garnier discovered its omission in April of 1988 and then waited over four years before adding notice to its Swirled Hoop Earrings. Although we found this assumption erroneous for summary judgment purposes, the court's decision can nevertheless be upheld on the alternative finding that Garnier's cure efforts were insufficient as a matter of law even under the assumption that Garnier was only required to add notice to copies of the Swirled Hoop Earring in retail inventories as of July 1992, and thus did not delay its cure efforts. Medina-Mu oz, 896 F.2d at 7; Chamberlin v. 101 Realty, ____________ __________ ___________ Inc., 915 F.2d 777, 783 n.8 (1st Cir. 1990) (in reviewing of ____ summary judgment orders, we are free to affirm the district court on any independently sufficient ground supported by the record.) As an initial matter, Garnier argues that there were few, if any, copies of the Swirled Hoop Earring in retail inventories as of July 1992, and, therefore, it was not required to take any effort to add notice to retail inventory copies to satisfy the "reasonable effort" requirement in 405(a)(2). -29- Garnier points to testimony in the record to the effect that inventories were normally depleted in the summer months because it was the low point in the business cycle when new orders are normally made for fall delivery. There is no dispute, however, that at least one Swirled Hoop Earring without notice, the one bought by Andin, was in one retailer's inventories as late as September of 1992. More importantly, Garnier does not dispute that it did not know whether any of its retailers had copies of the Swirled Hoop Earring remaining in stock in July of 1992, and, in fact, Garnier sent a letter to its fifty largest retailers regarding the Swirled Hoop Earring on the assumption that if any retailers had remaining inventory, it would be the larger ones. Because the reasonable effort requirement in 405(a)(2) applies to "all" copies distributed to the public after discovery of omission, 17 U.S.C. 405(a)(2), Garnier's obligation to cure is triggered once Garnier has reason to believe any of its retail customers have any Swirled Hoop Earrings in their inventories, even if only a few items. See ___ generally Lifshitz, 806 F.2d at 1434 (holding that a copyright _________ ________ owner has an obligation to add copyright notice to copies distributed to retail dealers); M. Kramer, 783 F.2d at 444 __________ (same); Shapiro & Son, 764 F.2d at 74 (same). At the very least, _____________ Garnier is obligated to take some effort to find out if its retailers have any earrings in stock. Garnier, however, did not do this. We find, therefore, that because there is no dispute that (1) at least one unnoticed Swirled Hoop Earring was in -30- retail inventories; (2) Garnier suspected that its largest customers had at least a few Swirled Hoop Earrings in their inventories; and (3) Garnier made no effort to find out for sure whether any of its customers still held copies of its Swirled Hoop Earring, no genuine issue of material fact exists as to whether Garnier was obligated to take "reasonable efforts" to add notice to copies in retail inventories. Consequently, summary judgment in favor of Andin is not precluded on the basis that the lack of evidence of significant amounts of inventory excuses Garnier from taking efforts to cure potential Swirled Hoop Earrings in retail inventories. As we discuss below, other factors may alleviate the need to add notice to retail inventories if, for example, such factors make the effort required to add notice unduly burdensome or futile. See, e.g., Shapiro & Son, 764 F.2d at 74-75. In such ___ ____ _____________ circumstances, summary judgment may not be appropriate, even though the author made no effort to add notice to inventories, because it was reasonable not to cure those copies under the circumstances. The mere justification that the author thought its retail inventories would be low during the summer months, however, does not constitute such a factor and does not excuse the requirement to effect a cure. Garnier was therefore required to add notice to copies of the Swirled Hoop Earring in the retail inventories of its customers. We are finally prepared to address the issue of whether Garnier's cure efforts were insufficient and thus unreasonable as -31- a matter of law. Efforts to cure under 405(a)(2) must consist of steps designed to "add notice to all copies" distributed after __________ omission of notice is discovered. 17 U.S.C. 405(a)(2). Pursuant to 17 U.S.C. 401(c), copyright notice must be "affixed" to each copy for which protection is desired. Failure to "affix" a notice to the copy renders that notice legally deficient and defective. Shapiro & Son, 764 F.2d at 72. The ______________ legal consequences of a deficient notice are the same as those for an omitted notice. Id. at 72 n.3; see also Lifshitz, 806 ___ ________ ________ F.2d at 1432, 1434 (a defective notice constitutes no notice as a matter of law). Accordingly, to cure an omission, the author must add legally proper notice to all copies. To satisfy 405(a)(2), therefore, the author must take "reasonable efforts" to add legally proper notice. Garnier submits that it undertook two different efforts to add copyright notice to copies of its Swirled Hoop Earring in retail inventories: (1) it sent a letter to its fifty largest retail customers stating that it held a copyright in the Swirled Hoop Earring; and (2) it provided a story card to its retail customers to accompany the sale of all its jewelry pieces. Neither measure constitutes a legally cognizable effort, reasonable or otherwise, to add notice to its Swirled Hoop Earrings. The letter was altogether inadequate because it did not "add notice" in any way to copies of the Swirled Hoop Earring. Not only was the letter not affixed to any of the Swirled Hoop Earrings, but it also failed to say anything about -32- Garnier's failure to attach copyright notice to the earring. Furthermore, the letter did not inform retailers of the need to attach some type of notice to the Swirled Hoop Earring or even to tell consumers about Garnier's copyright. See, e.g., Long v. CMD ___ ____ ____ ___ Foods, Inc., 659 F. Supp. 166, 169 (E.D. Ark. 1987). Thus, the ___________ letter does not qualify as a legally cognizable effort to "add notice," let alone a reasonable one. Garnier's story cards, which stated that every Garnier design is a "genuine copyrighted original," were also not "affixed" to the Swirled Hoop Earring and thus constituted an inadequate effort to add notice. Lifshitz, 806 F.2d at 1434 ________ (finding that author's cure effort, consisting of the addition of a defective notice, was not sufficient to represent a reasonable effort to add notice). Moreover, the story cards were not part of Garnier's reasonable efforts to add notice to copies of its Swirled Hoop Earring "after the omission ha[d] been discovered" pursuant to 405(a)(2). Rather, the cards were instituted by Garnier two years earlier, beginning in 1990, and were provided for all of Garnier's jewelry pieces. As such, the cards were merely a form of inadequate notice existing at the time Garnier discovered the omission of notice on its Swirled Hoop Earring and not part of any effort to add notice after the omission was discovered. Therefore, the story cards constituted something that needed tobe cured, not a part ofthe cure efforts themselves. We do not dispute that some inadequate cure efforts, such as the provision of notice which is not affixed to the -33- copies, can still be relevant to, though not alone sufficient to establish, the reasonableness of an author's overall cure efforts if such efforts contribute in some way to providing actual notice to the public of a claim of copyright. Shapiro & Son, 764 F.2d ______________ at 74-75. In this respect, measures like Garnier's story cards, but not Garnier's letter, could potentially enter the reasonableness calculus under 405(a)(2) to create, in combination with some other efforts, a material issue of fact on the question of whether reasonable cure efforts were taken. In this case, however, the story cards were distributed prior to the discovery of the omission of notice and thus do not constitute a "reasonable effort" to "add notice" to copies pursuant to the cure requirements in 405(a)(2). Therefore, Garnier's story cards are not cognizable as an effort to cure omission of notice. To the extent Shapiro & Son adopts a contrary rule on this issue, _____________ id. at 74-75, we respectfully part company with the Second __ Circuit. In summary, then, we find that Garnier undertook no legally cognizable efforts under 405(a)(2) to add notice to retail inventories of its Swirled Hoop Earring. Garnier maintains that even if the steps taken with respect to retail inventories are inadequate, by themselves, to constitute a reasonable effort to add notice, when such steps are combined with Garnier's efforts to add complete and adequate notice to all new Swirled Hoop Earrings produced after discovery of omission in July of 1992, and to all Swirled Hoop Earrings held by Garnier at that time, the totality of the efforts are -34- together sufficient to create a material issue of fact as to whether Garnier took reasonable efforts to cure. See Shapiro & ___ _________ Son, 746 F.2d at 75. We do not agree. Section 405(a)(2) ___ requires reasonable efforts to add notice to "all" copies. 17 U.S.C. 405(a)(2). Where an author makes no legally cognizable effort to add notice to an identifiable group of copies which lack notice, and there are no significant obstacles hindering the author from adding notice to such copies, that author cannot be said to have taken reasonable efforts to cure as a matter of law. In the event that adding notice to retail inventories would have been burdensome, unduly costly, unavailing, futile or otherwise unreasonable, a prospective cure -- that is adding notice only to new copies thereafter produced and distributed -- by itself can be sufficient to constitute reasonable efforts to cure. See ___ Shapiro & Son, 746 F.2d at 74-75 (noting that there was a ______________ material issue of fact as to whether the author's efforts to add notice to items in retail inventories would have been burdensome or unavailing). That, however, is not the case here. Unlike the author in Shapiro & Son, Garnier does not assert that an effort ______________ to add notice to retail inventories of the Swirled Hoop Earring would be unavailing, overly costly or burdensome. Garnier could have easily provided retailers with gummed labels or hang tags for the Swirled Hoop Earrings without much cost or effort. In this situation, adding notice to only newly produced copies and copies in Garnier's own possession is insufficient, as a matter of law, to constitute reasonable efforts under 405(a)(2). See, ___ -35- e.g., Val-Matic, 730 F. Supp. at 144 (finding cure efforts ____ _________ insufficient where author made no effort to correct copies still in the hands of distributors where such efforts would have imposed "little, if any, burden," despite provision of notice on new copies); see also Videotronics, Inc., 586 F. Supp. at 480, ________ ___________________ 483. We accordingly affirm the district court's grant of summary judgment on the ground that Garnier failed to take reasonable efforts to cure the omission of copyright notice for its Swirled Hoop Earring. Affirmed, with costs to be paid by appellant. ________ -36-